UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
REGINALD B. PARRISH,

                             Petitioner,              **REPORT AND RECOMMENDATION**

      -against-

                                                            10 Civ. 8708 (KMK) (GAY)

WILLIAM LEE, Superintendent,
Green Haven Correctional Facility,

                             Respondent.
--------------------------------------------------------X

TO THE HONORABLE KENNETH M. KARAS, United States District Judge:

      Petitioner Reginald B. Parrish ("petitioner") has filed a *pro se* Petition seeking a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. For the reasons set forth below, I respectfully recommend that the Court deny the petition in its entirety.

**I. PROCEDURAL BACKGROUND**

      In the early morning hours of December 22, 2004, petitioner and three other men abducted sixteen-year-old Robert Roderick, Jr. and slashed a fifteen-centimeter wound across his neck before leaving him to die near the Yonkers waterfront. See Affidavit in Opposition to Petition for Writ of Habeas Corpus ("Aff. Opp."), at 2. Roderick survived the attack and, after he was released from the hospital, he identified his assailants from various photo arrays. See id.

      On or about April 20, 2005, a felony complaint was filed and a warrant was

issued for petitioner's arrest.  See Respondent's Exhibits 1-16, Exh. 11, at 13;[1] Exh. 7, at 9.  Petitioner was arrested on June 29, 2006 in Jacksonville, Florida.  See Exh. 3, Affidavit in Opposition, at 5.  On July 12, 2006, petitioner was extradited to New York.  See Exh. 11 at 16.  On July 13, 2006, he was arraigned in Yonkers City Court (with counsel present) and requested a felony hearing, which was scheduled for July 20, 2006.  See Exh. 3, Supplemental Affidavit in Opposition, at 2-3.  The victim failed to appear at the scheduled felony hearing (due to concerns for his safety); at the People's request the felony hearing was adjourned to August 21, 2006.  See id. at 3.  The victim again failed to appear; at the People's request the felony hearing was adjourned to September 13, 2006.  See id.

On September 6, 2006, by Westchester County indictment No. 05-0485, petitioner was charged with one count of attempted murder in the second degree, one count of gang assault in the first degree, four counts of assault in the first degree, and four counts of criminal possession of a weapon in the third degree.  See Exh. 1; Exh. 3, Affidavit in Opposition, at 5.  On September 14, 2006, petitioner was arraigned on the indictment and entered a plea of not guilty.  See id.

By notice of motion dated October 29, 2006, defense counsel sought certain omnibus relief including, *inter alia*, dismissal of the indictment for lack of a speedy trial under both statutory and constitutional theories.  See Exh. 2.  By Decision and Order dated November 28, 2006, the Supreme Court, Westchester County (Adler, J.) ordered, *inter alia*, that a hearing be held prior to trial to determine whether the People met their

---

[1] Hereinafter, all citations to "Exh. ___" refer to Respondent's Exhibits.

burden with regard to petitioner's right to a speedy trial. See Exh. 4, at 3. The hearing was held over five days (February 8-9, 15, 27-28, 2007), at the conclusion of which the matter was adjourned pending submission of written arguments on the issue of due diligence. See Transcripts of Hearings Before Trial and Wade Hearing; Exhs. 5, 6. By Decision and Order dated March 23, 2007, the trial court concluded (1) that the People's announcement of readiness on September 14, 2006 was timely and (2) "that the pre-indictment delay was not so unreasonable as to establish a violation of the defendant's constitutional right to a speedy trial" and, thus, denied petitioner's speedy trial claim. See Exh. 7, at 17-21.

On May 3, 2007, a Westchester County Court jury convicted petitioner of attempted murder in the second degree, gang assault in the first degree and two counts of assault in the first degree. See Aff. Opp., at 4. On July 10, 2007, petitioner was sentenced as a second violent felony offender to concurrent determinate terms of imprisonment of twenty-two years (attempted murder), twenty years (gang assault) and twenty years on each of the two assault counts, plus a five-year term of post-release supervision. See id. at 5.

On or about September 14, 2009, petitioner (by and through counsel) timely appealed his conviction to the Appellate Division, Second Department on the following grounds:  1) the evidence was legally insufficient to support petitioner's conviction and the verdict was against the weight of the evidence; 2) petitioner was denied a fair trial because the trial court erroneously instructed the jury with regard to avoidance of arrest (flight) and consciousness of guilt; and 3) the trial court erroneously denied petitioner's speedy trial motion to dismiss the indictment. See Exh. 10. By Decision and Order

dated March 2, 2010, the Second Department affirmed petitioner's judgment of conviction.  See People v. Parrish, 71 A.D.3d 697, 898 N.Y.S.2d 551 (2d Dep't 2010).  The New York Court of Appeals denied petitioner leave to appeal on May 26, 2010.  See People v. Parrish, 14 N.Y.3d 891, 929 N.E.2d 1014, 903 N.Y.S.2d 779 (2010).

On or about November 24, 2010, petitioner filed a petition for a writ of error coram nobis, on the ground that his appellate counsel was ineffective because he failed to argue that petitioner's conviction was inconsistent with his acquittal of criminal possession of a weapon in the third degree.  See Aff. Opp., at 8.  By Decision and Order dated April 5, 2011, the Second Department denied petitioner's application.  See People v. Parrish, 83 A.D.3d 738, 919 N.Y.S.2d 896 (2d Dep't 2011).  Petitioner sought leave to appeal the denial of his *coram nobis* to the Court of Appeals; by letter dated May 17, 2011, the Clerk of the Court informed petitioner that his application was incomplete.  See Aff. Opp., at 8.  By letter dated September 1, 2011, the Clerk of the Court of Appeals acknowledged that it had received petitioner's request to withdraw his leave application, but informed petitioner that "because [he] never filed a complete application for leave to appeal, there is no pending matter to be withdrawn."  See Exh. 16.

Petitioner filed the instant Petition for habeas relief on or about October 28, 2010, wherein he reasserts the claims he raised on direct appeal, *to wit*: 1) the evidence was legally insufficient to support his conviction and the verdict was against the weight of the evidence; 2) he was denied a fair trial because the trial court erroneously instructed the jury with regard to avoidance of arrest (flight) and consciousness of guilt; and 3) the trial court erroneously denied his speedy trial motion to dismiss the indictment.

**II. UNEXHAUSTED CLAIMS**

"An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State . . . ." 28 U.S.C. § 2254(b)(1). A habeas petitioner satisfies the exhaustion requirement if he has presented his claims for post-conviction relief to the highest state court. See Humphrey v. Cady, 405 U.S. 504, 516 (1972); Grey v. Hoke, 933 F.2d 117, 119 (2d Cir. 1991). "He may do so either by raising the federal claim on direct appeal to the state's highest court *or* by collateral attack of the conviction and subsequent appeal of the denial of that application to the state's highest court." Pierre v. Ercole, 594 F. Supp.2d 469, 470 (S.D.N.Y. 2009) (quotation and citation omitted) (emphasis in original). Further, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state law claim was made." Anderson v. Harless, 459 U.S. 4, 6 (1982) (citation omitted). To properly exhaust a state court remedy, a petitioner "must apprise the highest state court of both the factual and the legal premises of the federal claims ultimately asserted in the habeas petition." See Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005).

Upon examination of the record, I conclude, and respectfully recommend, that petitioner's first and second grounds for habeas relief–insufficient evidence/verdict against weight of the evidence and erroneous jury instructions–are not exhausted because they were not presented to the New York Court of Appeals. In his leave application, petitioner specifically stated:

> One issue of law, preserved in the trial court and raised by the

> [petitioner] in the intermediate appellate court, will be stressed on this application as a question which ought to be reviewed by the Court of Appeals. That is, was the [petitioner's] right to a Speedy Trial [ ] violated.

See Exh. 13. In the remainder of his leave application which followed, petitioner argued his speedy trial claim at length but made no reference to his other claims. In sum,

> The fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three claims and a letter to the Court of Appeals arguing only one of them, was that the other two had been abandoned. The only possible indication that the other two claims were being pressed was the inclusion of a lengthy brief originally submitted to another court. This did not fairly apprise the court of the two claims. We decline to presume that the New York Court of Appeals has "a duty to look for a needle in a paper haystack."

Grey, 933 F.2d at 120 (citation omitted). Accordingly, I conclude, and respectfully recommend, that petitioner's first and second claims are unexhausted.

Nevertheless, said claims are "deemed exhausted" since petitioner no longer has remedies available in the state courts. See Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994). Petitioner cannot again seek leave to appeal his claims in the Appellate Division or Court of Appeals because he has already made the one request for leave to appeal to which he is entitled. See N.Y. Ct. Rules § 500.20(a); N.Y. Crim. Proc. Law § 460.15. Further, petitioner is precluded from raising his claims in a collateral proceeding because he could have presented them on direct appeal but did not. See N.Y. Crim. Proc. Law § 440.10(2)(c).

Although petitioner's first and second claims are deemed exhausted, petitioner's forfeiture of said claims in state court "bars him from litigating the merits of those claims in federal habeas proceedings, absent a showing of cause for the procedural default and prejudice resulting therefrom." See Grey, 933 F.2d at 121. Alternatively, said

claims–while otherwise procedurally barred–may receive federal habeas review if petitioner shows that the failure to consider the claims will result in a fundamental miscarriage of justice because "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). Here, however, petitioner does not allege cause or prejudice for his procedural default, nor does he allege that this Court's failure to address the merits of said claims would result in a fundamental miscarriage of justice. Accordingly, I respectfully recommend that petitioner's first and second claims are procedurally barred from consideration by this Court and must be dismissed.[2]

### III.  STANDARD OF REVIEW

"[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 68 (1991). See 28 U.S.C. § 2254(a). Subsequent to the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which amended 28 U.S.C. § 2254, a federal court may not grant habeas relief for any claim adjudicated on the merits in state court unless the petitioner establishes, in pertinent part, that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." See 28 U.S.C. § 2254(d)(1).

---

[2] Dismissal of a claim for habeas relief on the ground of procedural default amounts to "a disposition of the habeas claim on the merits." See Carvajal v. Artus, 633 F.3d 95, 104 (2d Cir. 2011).

A state court's decision is "contrary to" clearly established Federal law if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme Court of the United States] on a question of law" or if (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [that reached by the Supreme Court of the United States]." See Williams v. Taylor, 529 U.S. 362, 405 (2000). As to the "unreasonable application" prong, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." See id. at 411. A state court decision involves an "unreasonable application" of Federal Supreme Court precedent if (1) "the state court identifies the correct legal rule from [Federal Supreme Court] cases but unreasonably applies it to the facts of the particular state prisoner's case" or (2) "the state court either unreasonably extends a legal principle from [Federal Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." See id. at 407. However, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." See Harrington v. Richter, 131 S. Ct. 770, 786 (2011) (citation omitted). In other words, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Id. at 786-87.

Finally, under the AEDPA, the factual findings of state courts are presumed to be correct.  See 28 U.S.C. § 2254(e)(1); see also Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this presumption by "clear and convincing evidence."  See 28 U.S.C. § 2254(e)(1).

## IV.  SPEEDY TRIAL CLAIM

The Sixth Amendment guarantees the right to a "speedy and public trial" in all criminal prosecutions.  U.S. Const. amend. VI.  As his third ground for habeas relief, petitioner claims that his right to a speedy trial was violated.  Petitioner presented his speedy trial claim on direct appeal to the Appellate Division; the Second Department affirmed petitioner's judgment of conviction on the ground, *inter alia*, "that the defendant's right to a speedy trial was not violated."  See Parrish, 71 A.D.3d at 698-99, 898 N.Y.S.2d at 552.  This Court must therefore determine whether the Second Department's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).

In the first instance, regarding the statutory aspects of petitioner's claim,

> [b]ecause errors of state law are not grounds for granting habeas relief, any non-compliance with New York State's speedy trial statute is irrelevant to a speedy trial claim.  The only issue is whether the Appellate Division's decision rejecting this claim was *contrary to* or involved an *unreasonable application of* clearly established Supreme Court law governing the federal constitutional right to a speedy trial.

See Warwick v. Kuhlmann, No. 98 Civ. 6393, 2003 WL 22047883, at *2 (S.D.N.Y. Aug. 29, 2003) (quotation and citation omitted) (emphasis in original).  Accordingly, to the

extent petitioner's claim is based on an alleged violation of his statutory rights under New York's Criminal Procedure Law § 30.30, said claim is not cognizable on federal habeas review.  See Gibriano v. Attorney Gen. of N.Y., 965 F. Supp. 489, 491-92 (S.D.N.Y. 1997).  Furthermore, to the extent petitioner asserts an alleged violation of his Sixth Amendment right to a speedy trial, his claim fails on the merits.

    The Supreme Court has set forth a balancing test which "compels courts to approach speedy trial cases on an ad hoc basis" via consideration of four factors:  the "[l]ength of the delay, the reason for the delay, the [petitioner's] assertion of his right, and prejudice to the [petitioner]."  See Barker v. Wingo, 407 U.S. 514, 530 (1972).  None of these factors is "either a necessity or sufficient condition to the finding of a deprivation of the right of speedy trial.  Rather, they are related factors and must be considered together with such other circumstances as may be relevant."  See id. at 533.  Here, in the first instance, the Second Department denied petitioner's constitutional speedy trial claim based upon the New York Court of Appeal's five-factor test set forth in People v. Taranovich, 37 N.Y.2d 442, 335 N.E.2d 303, 373 N.Y.S.2d 79 (1975).  See Parrish, 71 A.D.3d at 699, 898 N.Y.S.2d at 552.[3]  "Although the *Taranovich* factors and the *Barker* factors are not identically phrased, they are essentially identical tests."  Gathers v. New York, No. 11-CV-1684, 2012 WL 71844, at *12 (E.D.N.Y. Jan. 10, 2012).  Accordingly, I conclude that the Second Department's application of the *Taranovich* factors was not contrary to clearly established federal law.  See id. at *13.

    Further, considering petitioner's claim in the context of the *Barker* factors, he has

---

[3] The trial court also denied petitioner's constitutional speedy trial claim based upon *Taranovich*'s five-factor test.  See Exh. 7, at 19-20.

failed to demonstrate that his Sixth Amendment right to a speedy trial was violated. As to the first *Barker* factor, "[t]he length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." See Barker, 407 U.S. at 530. Here, petitioner argues that his right to a speedy trial was violated due to the approximately fourteen-month delay between the filing of the accusatory instrument (on April 20, 2005) and his arrest (on June 29, 2006). Although there is no precise measurement for the threshold when a delay becomes presumptively prejudicial, the Second Circuit has noted "a general consensus that a delay of over eight months meets this standard." See United States v. Vassell, 970 F.2d 1162, 1164 (2d Cir.1992). Thus, the length of the delay in petitioner's case is sufficient to trigger further inquiry.

As to the second *Barker* factor (reason for the delay),

> different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Barker, 407 U.S. at 531. Here, petitioner argues that the reason for the delay is attributable to the government. Specifically, petitioner correctly points out that the government's lead detective in this case, Detective Mendez ("Mendez"), failed to attempt to locate petitioner at the last known address listed on his rap sheet at the time of his investigation. See Exh. 5, at 2; Traverse, at 2-3.

Petitioner's rap sheet clearly indicates that, prior to his July 12, 2006 arrest for

the instant crime, his last known address was 145 Elm Street, Yonkers, New York. See Traverse, Exh. 1. Nevertheless, Mendez testified at a pre-trial hearing that he neither looked for petitioner at 145 Elm Street nor notified the warrant squad that petitioner might be located there. See Traverse, Exh. 3, Mendez – Cross/Schneider, at 323-24. Instead, Mendez searched for petitioner at his mother's residence at 4 Waring Row, Yonkers and his girlfriend's residence at 170 (or 172) South Broadway, Yonkers. See Exh. 5, at 2; Exh. 7, at 2-3. On April 27, 2005, the warrant squad received an arrest warrant for petitioner indicating he resided at the same address as his half-brother and included a telephone number for his mother. See Exh. 7, at 7-8. Consequently, the warrant squad only attempted to locate petitioner at 4 Waring Road. See id. at 19. These facts contradict the hearing court's finding that Mendez and the warrant squad diligently checked petitioner's last known address. See id. Under the AEDPA, although the factual findings of state courts are presumed to be correct, petitioner may rebut this presumption by "clear and convincing evidence." See 28 U.S.C. § 2254(e)(1). Petitioner appears to have done so here. Contrary to the hearing court's determination, Mendez's negligence "should be weighted less heavily but nevertheless should be considered since ultimate responsibility for such circumstances must rest with the government rather than with the [petitioner]." See Barker, 407 U.S. at 531. Accordingly, the second *Barker* factor tips slightly in petitioner's favor.

>Regarding the third *Barker* factor (assertion of the right),
>
>[w]hether and how a defendant asserts his right is closely related to the other factors . . . . The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the

> more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right.

Id. at 531-32. Here, petitioner asserted his speedy trial right in an omnibus motion before the trial court and also on direct appeal to the Second Department and Court of Appeals. Thus, the third *Barker* factor also weighs in favor of petitioner.

As to the fourth *Barker* factor, prejudice to the petitioner should be assessed in light of the interests the speedy trial right was designed to protect: "(I) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." See Barker, 407 U.S. at 532. Here, the first two policy considerations weigh strongly against petitioner. First, although the felony complaint was filed on April 20, 2005, petitioner was not incarcerated until his arrest in Jacksonville, Florida on June 29, 2006. In other words, because of the delay, petitioner avoided incarceration. Second, petitioner asserts that "he was unaware of the warrant against him until his arrest." See Traverse, at 5. Thus, petitioner apparently did not experience any relevant anxiety or concern during the time of the delay. Finally, apart from his conclusory allegations, petitioner fails to demonstrate that his defense was impaired by the delay. Accordingly, the final *Barker* factor (prejudice) weighs strongly against petitioner.

Even though *Barker* does not require defendants to demonstrate prejudice to prevail on a speedy trial claim, "courts generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice." See United States v. Jones, 129 F.3d 718, 724 (2d Cir. 1997). See also United States v. Cain, 671 F.3d 271, 297 (2d Cir. 2012) ("we have generally required a showing of some significant trial-related

disadvantage in order to establish a speedy-trial violation"). Further, "the Supreme Court has instructed that where negligently caused delays are 'unaccompanied by particularized trial prejudice,' the delays in question 'must have lasted longer' than would otherwise be required for relief to be appropriate." Smith v. La Clair, 353 Fed. App'x 486, 488 (2d Cir. 2009) (quoting Doggett v. United States, 505 U.S. 647, 657 (1992)). In sum, taking into account all of the *Barker* factors and the totality of the circumstances here, the Appellate Division's rejection of petitioner's speedy trial claim was not contrary to, or an unreasonable application of, clearly established federal law. Accordingly, I conclude, and respectfully recommend, that petitioner is not entitled to habeas relief on his speedy trial claim.

## V.  CONCLUSION

For the foregoing reasons, I respectfully recommend that the instant petition for a writ of habeas corpus be denied in its entirety.[4]

## VI.  NOTICE

Pursuant to 28 U.S.C. § 636(b)(1)(c), as amended, and Fed. R. Civ. P. 72(b), the parties shall have fourteen (14) days from receipt of this Report to serve and file written objections to this Report and Recommendation. If copies of this Report are served upon the parties by mail, the parties shall have seventeen (17) days from receipt of this

---

[4] Attached to this Report and Recommendation are copies of all unpublished opinions and decisions available only in electronic form cited herein. See Lebron v. Sanders, 557 F.3d 76, 78 (2d Cir. 2009).

Report to file and serve written objections. See Fed. R. Civ. P. 6(d). Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas at the United States District Court, Southern District of New York, 300 Quarropas Street, White Plains, New York, 10601, and to the chambers of the undersigned at said Courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered. See Caidor v. Onondaga County, 517 F.3d 601, 604 (2d Cir. 2008).

Requests for extensions of time to file objections must be made to the Honorable Kenneth M. Karas and not to the undersigned.

Dated:   August 20, 2013
         White Plains, New York

Respectfully Submitted,

_____
GEORGE A. YANTHIS, U.S.M.J.