UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

REGINALD B. PARRISH,

                              Petitioner,

        -v-

WILLIAM LEE, Superintendent,
Green Haven Correctional Facility,

                              Respondent.

Case No. 10-CV-8708 (KMK)

ORDER ADOPTING R&R

Appearances:

Reginald B. Parrish
Stormville, NY
*Pro se Petitioner*

John James Sergi, Esq.
Westchester County District Attorney's Office
White Plains, NY
*Counsel for Respondent*

KENNETH M. KARAS, District Judge:

        Pro se Petitioner Reginald B. Parrish ("Petitioner") filed a Petition for Writ of Habeas

Corpus pursuant to 28 U.S.C. § 2254, challenging the constitutionality of his conviction in state

court. Magistrate Judge George A. Yanthis issued a Report and Recommendation ("R&R"),

recommending that the Court dismiss the Petition. Petitioner and Respondent timely filed

objections to the R&R. For the reasons stated herein, the Court adopts the R&R to the extent it

is consistent with this Order and dismisses the Petition.

## I. Background

### A. Factual Background

On December 22, 2004, sixteen-year-old Robert Roderick, Jr. was abducted by four men, who took him to the Yonkers waterfront, and slit his throat. (*See* Mem. of Law ("Resp.'s Mem.") 2 (Dkt. No. 19); Resp.'s Mem. Ex. 3 (Aff. in Opp'n) 2 (Dkt. No. 34).)[1] Roderick ultimately survived the attack. (*See* Resp.'s Mem. Ex. 3 (Aff. in Opp'n) 2–4.)

Yonkers Police Department Detective Victor Mendez was assigned to investigate the assault. (Resp.'s Mem. Ex. 7 (Decision & Order) 1.) On January 25, 2005, Detective Mendez went to a private residence where he spoke to a woman who told him that Petitioner was not home. (*Id.* at 2.) On the same day, Detective Mendez went to 170 or 172 South Broadway, Yonkers, NY, "based upon information he had been given that [Petitioner's] girlfriend . . . lived at this address," but he "did not find anyone there by that name." (*Id.* at 2–3.) Detective Mendez returned to the first residence on January 28, 2005 and February 12, 2005, but did not find Petitioner. (*See id.* at 3.)

On April 20, 2005, a felony complaint was filed against Petitioner, (*id.*), and on April 27, 2005, Police Officer Mark Carozza received an arrest warrant for Petitioner, (*see id.* at 5, 7). Officer Carozza logged the information about Petitioner into the Yonkers Police Department's computer system, which is linked to nationwide and statewide law enforcement databases. (*Id.*) On May 11, 2005, June 7, 2005, and June 22, 2005, the Yonkers Police Department's warrant

---

[1] Because the exhibits to Respondent's Memorandum of Law were filed on the docket after the Memorandum itself, all subsequent cites to exhibits to Respondent's Memorandum of Law appear at entry number 34 on the docket.

Additionally, the Court notes that Exhibit 3 to Respondent's Memorandum of Law, by itself, comprises several documents. Accordingly, when the Court cites to specific pages in this Exhibit, the page number that the Court provides refers to the page number within the relevant constituent document, rather than that page's placement within Exhibit 3 in its entirety.

2

squad returned to 4 Waring Row, Petitioner's last known address, but there was no answer. (*Id.* at 8.) On October 4, 2005, the warrant squad returned to the location and spoke with a woman identified as Petitioner's mother, who said that she was unaware of her son's whereabouts. (*Id.*) Members of the warrant squad returned to 4 Waring Row on January 11, 2006, and again spoke with the woman who stated she did not know her son's whereabouts but would call them when she had such information. (*Id.*) On April 24, 2006, Petitioner was placed on the Yonkers Police Department's "Most Wanted" website. (*Id.*) On June 29, 2006, the warrant squad received information that Petitioner had been arrested in Jacksonville, Florida, and finally was extradited to Westchester County on July 12, 2006. (*Id.*) Petitioner was arraigned on July 13, 2006. (Resp.'s Mem. Ex. 3 (Suppl. Aff. in Opp'n) 2–3.)

On September 6, 2006, Petitioner was charged, under Grand Jury Indictment No. 05-0485, with one count of attempted murder in the second degree, one count of gang assault in the first degree, four counts of assault in the first degree, four counts of criminal possession of a weapon in the third degree, and four counts of criminal possession of a weapon in the fourth degree. (*See* Resp.'s Mem. Ex. 1 (Indictment); Resp.'s Mem. Ex. 3 (Aff. in Opp'n) 5.) Petitioner was arraigned on the Indictment on September 14, 2006. (Resp.'s Mem. Ex. 3 (Aff. in Opp'n) 5.)

On May 3, 2007, Petitioner was convicted by a jury of attempted murder in the second degree, gang assault in the first degree, and two counts of assault in the first degree. *People v. Parrish*, 898 N.Y.S.2d 551, 552 (App. Div. 2010). He was sentenced as a second felony offender to concurrent determinate terms of imprisonment of 22 years for attempted murder, 20 years on each of the remaining charges, to be followed by a term of five years of supervised release. (*See* Resp.'s Mem. Ex. 9 (Decision & Order) 1.)

3

### B. Procedural Background

Before trial, Petitioner sought relief from the trial court, including dismissal of the Indictment for a violation to his right to a speedy trial. (*See* Resp.'s Mem. Ex. 2 (Motion), at 2 (moving for an "ORDER pursuant to C.P.L. 30.20 and 30.30 dismissing the indictment on the grounds that the defendant has been denied his right to a speedy trial").) The trial court conducted a five-day hearing on that motion, as well as the other pending pre-trial matters, after which the judge concluded that dismissal was not warranted. (*See* Resp.'s Ex. 4 (Decision & Order), at 3 (ordering a hearing on the speedy trial issue); Tr. of Hearings Before Trial (Indictment No. 485-2005) (Feb. 8, 2007, Feb. 9, 2007, Feb. 15, 2007, Feb. 27, 2007, Feb. 28, 2007); Resp.'s Mem. Ex. 7 (Decision & Order), at 1, 20–21 (ruling that the pre-arrest delay "was not so unreasonable as to establish a violation of [Petitioner's] constitutional right to a speedy trial" and that, with respect to his state speedy trial claim, "427 days of the approximate 13-month delay from . . . April 20, 2005 to July 12, 2006 was due to [Petitioner's] absence" and that "the Yonkers Police Department made diligent efforts to locate him during that period," that "he was not incarcerated during this period," and that Petitioner made no "claim of resultant prejudice").) During trial, Petitioner also objected to the portion of the jury charge dealing with consciousness of guilt. (Resp.'s Mem. Ex. 10 (Pet'r's Appellate Brief), at 17; Trial Tr. at 614–20 (Indictment No. 485/05).)

Petitioner appealed his conviction to the Appellate Division, Second Department on the following grounds: (1) "the evidence was legally insufficient to support [P]etitioner's conviction and the verdict was against the weight of the evidence;" (2) "[P]etitioner was denied a fair trial because the trial court erroneously instructed the jury with regard to avoidance of arrest (flight) and consciousness of guilt;" and (3) "the trial court erroneously denied [P]etitioner's speedy trial

4

motion to dismiss the indictment." (R&R 3 (Dkt. No. 23); *see also* Resp.'s Mem. Ex. 10 (Pet'r's Appellate Brief).) Petitioner's conviction was affirmed on the merits on March 2, 2010. *See People v. Parrish*, 898 N.Y.S.2d 551, 552 (App. Div. 2010).

On March 30, 2010, Petitioner sought leave to appeal to the New York Court of Appeals. (*See* Resp.'s Mem. Ex. 13, at 1.) This leave application will be discussed in detail below. The New York Court of Appeals denied Petitioner's application for leave to appeal on May 26, 2010. *See People v. Parrish*, 929 N.E.2d 1014 (N.Y. 2010).

On November 18, 2010, Petitioner filed the instant Petition. (Dkt. No. 1.) Thereafter, Petitioner filed a petition for writ of error coram nobis in state court and, on his request, Judge Yanthis stayed the habeas Petition until the state court decided the coram nobis petition. (Dkt. No. 13.) Petitioner's petition for writ of error coram nobis was denied by the Appellate Division on April 5, 2011. *See People v. Parrish*, 919 N.Y.S.2d 896 (App. Div. 2011). Petitioner sought leave to appeal by letter dated April 29, 2011, and, on May 17, 2011, he was informed that his application was incomplete; Petitioner then sought to withdraw his application for leave to appeal, but was informed on September 1, 2011 that because his application had never been completed there was nothing to withdraw. (*See* Resp.'s Ex. 16 (Letter from Andrew W. Klein, Clerk of the New York Court of Appeals to Reginald Parrish (Sept. 1, 2011)).) On July 7, 2011, the stay of the habeas Petition was lifted. (Dkt. No. 14.) Respondent submitted his opposition to the Petition (Dkt. Nos. 17–19), and Petitioner submitted papers in support, (Dkt. No. 24). On August 20, 2013, Judge Yanthis issued the R&R recommending dismissal of the Petition, (Dkt. No. 23), to which both Petitioner and Respondent timely objected, (Dkt. Nos. 27–28).[2] Finally,

---

[2] The R&R was filed on August 20, 2013. Generally, objections must be filed within 14 days of being served with the R&R, and responses to another party's objections must be filed within 14 days of being served with a copy of the objections. *See* 28 U.S.C. § 636(b)(1); Fed. R.

by letter dated October 1, 2015, Petitioner requested the Court's assistance in obtaining certain

documents that Petitioner believed would help his case. (*See* Dkt. No. 35.)[3]

---

Civ. P. 72(b). When service is made by mail, the deadline is extended by three days. *See* Fed.
R. Civ. P. 6(d). Respondent's objections were filed on August 30, 2013, well within the
deadline. (*See* Letter from John M. Collins, Assistant District Attorney, to Court ("Resp.'s
Objs.") (Dkt. No. 27).) Petitioner filed his objections on September 5, 2013. (*See* Pet'r's Objs.
to R&R ("Pet'r's Objs.") (Dkt. No. 28).) This filing was made within the 17-day limit that
applies when, as here, service of the R&R was made by mail. (*See* Dkt. No. 23 (indicating that
the Clerk's Office mailed copies of the R&R).) Petitioner also submitted a reply to Respondent's
objections on September 9, 2013, 10 days after Respondent filed its objections. (*See* Letter from
Pet'r to Court (Sept. 9, 2013) (Dkt. No. 29).) Thus, by any count, Petitioner's reply was timely.

[3] At this late stage, the Court finds that Petitioner has not satisfactorily shown why he is
entitled to discovery. "A habeas petitioner, unlike the usual civil litigant in federal court, is not
entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904
(1997). For that reason, leave of the Court is required to conduct discovery, and Petitioner must
show "good cause" for any discovery. *See* Rule Governing § 2254 Cases Rule 6(a) ("A judge
may, for good cause, authorize a party to conduct discovery under the Federal Rules of Civil
Procedure and may limit the extent of discovery."); *see also Bracy*, 520 U.S. at 909 (finding that
the petitioner had made a sufficient showing—"as required by Habeas Corpus Rule 6(a)"—to
establish good cause for discovery); *Drake v. Portuondo*, 321 F.3d 338, 346 (2d Cir. 2003)
("Although a habeas petitioner . . . is not entitled to discovery as a matter of ordinary course,
discovery may be granted upon a showing of good cause." (internal quotation marks omitted));
*Ruine v. Walsh*, No. 00-CV-3798, 2005 WL 1668855, at *6 (S.D.N.Y. July 14, 2005) ("Rule 6
does not license a petitioner to engage in a fishing expedition by seeking documents merely to
determine whether the requested items contain any grounds that might support his petition, and
not because the documents actually advance his claims of error." (internal quotation marks
omitted)). Here, Petitioner requests discovery of a cab driver's license he obtained and five
categories of documents, discovery of which, he says, "would be very [] helpful to [Petitioner]
and to [Petitioner] gaining [his] freedom." (Letter from Petitioner to Court (Oct. 1, 2015) at
unnumbered 1–2 (Dkt. No. 35).) Specifically, Petitioner indicates that he believes the documents
requested may (1) demonstrate that the victim "was under the influence of [a] control[led]
substance," (2) "tell a different story th[a]n the People put forth," and (3) "hold[] 'Brady
material.'" (*Id.* at unnumbered 2.) Because Petitioner's request seems to relate only to
alternative strategies that he may now wish to have pursued during his trial or to unsubstantiated
suspicions of a *Brady* violation, he has not shown good cause for allowing discovery. *See* Rule
Governing § 2254 Cases Rule 6(a). The Court notes that Petitioner seems to suggest that his trial
attorney is wrongfully withholding documents belonging to Petitioner. (Letter from Petitioner to
Court (Oct. 1, 2015) at unnumbered 1.) If so, even if Petitioner is entitled to the return of such
property, a discovery request in a habeas petition is not the proper means to obtain it.

## II. Discussion

### A. The Petition

Petitioner raised three arguments in the instant Petition, which are the same as those set forth on direct appeal to the Appellate Division. In fact, the Petition's argument section is merely the table of contents from Petitioner's brief to the Appellate Division. (*Compare* Pet. at unnumbered 4 (Dkt. No. 1) *with* Resp.'s Mem. Ex. 10 (Pet'r's Appellate Brief).) Again, Petitioner's arguments are that (1) the evidence was legally insufficient to support Petitioner's conviction and the verdict was against the weight of the evidence, (2) Petitioner was denied a fair trial because the trial court erroneously instructed the jury with regard to avoidance of arrest and consciousness of guilt, and (3) the trial court erroneously denied his motion to dismiss the indictment on speedy trial grounds. (Pet. at unnumbered 4; R&R 4.)

Judge Yanthis recommended that the Court deny the Petition in its entirety. (R&R 14.) He recommended that the Court deny the first two claims—the insufficient evidence claim and the jury charge claim—as unexhausted but procedurally barred, (*id.* 5–7), and that the Court deny the third claim—the speedy trial claim—on the merits, (*id.* 9–14). With respect to the speedy trial claim, Judge Yanthis found that the length of the delay, the reason for the delay, and Petitioner's assertion of his right to a speedy trial weighed in favor of Petitioner; however, he held that because there was no prejudice, the state court's holding that Petitioner's speedy trial right was not violated was not erroneous or unreasonable. (*Id.* 9–14.)[4]

---

[4] With respect to the reason for the delay, the state court found that 427 days of the delay between April 20, 2005 and July 12, 2006 was "due to [Petitioner's] absence," and that "the Yonkers Police Department made diligent efforts to locate him during that period." (Resp.'s Ex. 7 (Decision and Order), at 20.) Judge Yanthis recommended a finding that Petitioner had rebutted the presumption that the state court's factual findings on this issue were correct with clear and convincing evidence. (R&R 12.)

7

Petitioner objected to Judge Yanthis's recommendations on all three claims. (*See* Pet'r's

Objs. to R&R ("Pet'r's Objs.") (Dkt. No. 28).)  As for the Speedy Trial claim, Petitioner

disagreed with the R&R on the merits. (*See id.* at unnumbered 6–11.)  Petitioner also objected to

Judge Yanthis's recommendation that the Court find the insufficiency of the evidence claim and

the jury instruction claim to be procedurally barred. (*See id.* at unnumbered 11–12.)  Petitioner

appeared to argue that these claims were exhausted because Petitioner included his brief to the

Appellate Division laying out these claims in his application for leave to appeal to the Court of

Appeals. (*Id.* at unnumbered 12.)  Additionally, Petitioner claimed that such a ruling would be

unfair and would violate Due Process. (*Id.*)  Finally, Petitioner argued that such a decision

would amount to a "miscarriage of [j]ustice to say the least." (*Id.* (internal quotation marks

omitted).)

Respondent also objected to Judge Yanthis's recommendations regarding Petitioner's

constitutional speedy trial claim on two grounds, one procedural and one on the merits.  First,

Respondent asserted that this claim was never exhausted because it was not properly raised in

Petitioner's leave application to the New York Court of Appeals. (Letter from John M. Collins,

Assistant District Attorney, to Court ("Resp.'s Objs.") at unnumbered 1–2 (Dkt. No. 27).)  In

particular, Respondent argued that this claim was not raised to the New York Court of Appeals

because Petitioner's leave application did not allege a violation of his federal constitutional

speedy trial right, instead focusing on his state speedy trial right, and because his brief to the

Appellate Division, which was appended to his leave application, includes only one sentence on

the constitutional claim. (*Id.*)  Second, while Respondent agreed with the ultimate outcome

recommended by Judge Yanthis, he objected to some of Judge Yanthis's analysis on the merits

of Petitioner's speedy trial claim. (*Id.* at unnumbered 2.)  In particular, Respondent objected to

Judge Yanthis's determination that the "reason for the delay" factor from *Barker v. Wingo*, 407 U.S. 514 (1972), pointed in Petitioner's favor. (*Id.*) Respondent urged the Court to instead find that the police used due diligence to find Petitioner, and therefore that this *Barker* factor also points to Petitioner's speedy trial right not being violated. (*Id.*)

### B.  Applicable Law

#### 1.  Standard of Review of a Magistrate Judge's R&R

A district court reviewing a report and recommendation addressing a dispositive motion "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), a party may submit objections to the magistrate judge's report and recommendation. The objections must be "specific" and "written," Fed. R. Civ. P. 72(b)(2), and must be made "[w]ithin 14 days after being served with a copy of the recommended disposition," *id.*; *see also* 28 U.S.C. § 636(b)(1), plus an additional three days when service is made pursuant to Federal Rules of Civil Procedure 5(b)(2)(C)–(F), *see* Fed. R. Civ. P. 6(d), for a total of seventeen days, *see* Fed. R. Civ. P. 6(a)(1).

Where a party timely submits objections to a report and recommendation, as Petitioner and Respondent have done here, the district court reviews de novo the parts of the report and recommendation to which the party objected. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). When evaluating a magistrate judge's report and recommendation, "[a] district court . . . may adopt those portions of the report [and recommendation] to which no 'specific, written objection' is made, as long as the factual and legal bases supporting the findings and conclusions set forth in those sections are not clearly erroneous or contrary to law." *Adams v. N.Y. State Dep't of Educ.*, 855 F. Supp. 2d 205, 206 (S.D.N.Y. 2012) (quoting Fed. R. Civ. P.

72(b)(2)), *aff'd sub nom. Hochstadt v. N.Y. State Educ. Dep't*, 547 F. App'x 9 (2d Cir. 2013).
Here, Petitioner made specific written objections to Judge Yanthis's recommendations with
respect to all three claims, and Respondent objected to Judge Yanthis's recommendations with
respect to the Speedy Trial claim. (*See generally* Pet'r's Objs; Resp.'s Objs.)  Therefore, the
Court will review all three of Petitioner's claims de novo.

### 2. Habeas Corpus

Petitions for habeas corpus are governed by the Antiterrorism and Effective Death
Penalty Act of 1996 ("AEDPA"), which provides that, where the decision was not based on an
unreasonable determination of the facts, a habeas petition "shall not be granted with respect to
any claim that was adjudicated on the merits in State court proceedings unless the adjudication of
the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application
of, clearly established federal law." 28 U.S.C. § 2254(d)(1).  In this context, "it is the habeas
applicant's burden to show that the state court applied [federal law] to the facts of his case in an
objectively unreasonable manner." *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002). "[A]n
unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 694
(2002); *see also Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) ("The question under AEDPA is
not whether a federal court believes the state court's determination was incorrect but whether
that determination was unreasonable—a substantially higher threshold."). Section 2254(d)
"reflects the view that habeas corpus is a guard against extreme malfunctions in the state
criminal justice systems, not a substitute for ordinary error correction through appeal."
*Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (internal quotation marks omitted).
Consequently, a federal court must deny a habeas petition in some circumstances even if the
court would have reached a conclusion different than the one reached by the state court, because

"even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102; *see also Cullen v. Pinholster*, 131 S. Ct. 1388, 1411 (2011) ("Even if the [federal] Court of Appeals might have reached a different conclusion as an initial matter, it was not an unreasonable application of our precedent for the California Supreme Court to conclude that [the petitioner] did not establish prejudice."); *Hawthorne v. Schneiderman*, 695 F.3d 192, 197 (2d Cir. 2012) ("Although we might not have decided the issue in the way that the [New York State] Appellate Division did—and indeed we are *troubled by the outcome we are constrained to reach*—we . . . . must defer to the determination made by the state court . . . ." (emphasis added) (citation omitted)).

Additionally, under AEDPA, the factual findings of state courts are presumed to be correct. *See* 28 U.S.C. § 2254(e)(1); *Nelson v. Walker,* 121 F.3d 828, 833–34 (2d Cir. 1997). The petitioner must rebut this presumption by "clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see also Cotto v. Herbert*, 331 F.3d 217, 233 (2d Cir. 2003) (same).

Finally, only federal law claims are cognizable in habeas proceedings. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991); *see* 28 U.S.C. § 2254(a) ("The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court *only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States*." (emphasis added)).

11

### 3. Exhaustion Requirement in Habeas Review of State Court Proceedings

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available remedies, thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citation and internal quotation marks omitted); *see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State . . . ."). Accordingly, "the prisoner must fairly present his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin*, 541 U.S. at 29 (internal quotation marks omitted); *see also* 28 U.S.C. § 2254(c) ("An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented."). This requirement reflects "notions of comity between the federal and State judicial systems." *Strogov v. Att'y Gen. of N.Y.*, 191 F.3d 188, 191 (2d Cir. 1999).

There are two components to the exhaustion requirement. *See McCray v. Bennet*, No. 02-CV-839, 2005 WL 3182051, at *7 (S.D.N.Y. Nov. 22, 2005) ("A two-step analysis is used to determine whether a claim has been exhausted . . . ."). "First, the petitioner must have fairly presented to an appropriate state court the same federal constitutional claim that he now urges upon the federal courts." *Klein v. Harris*, 667 F.2d 274, 282 (2d Cir. 1981), *overruled on other grounds by Daye v. Att'y Gen. of N.Y.*, 696 F.2d 186 (2d Cir. 1982); *see also Turner v. Artuz*, 262 F.3d 118, 123 (2d Cir. 2001) (same); *Oliver v. Kirkpatrick*, No. 06-CV-6050, 2012 WL 3113146, at *5 (E.D.N.Y. July 31, 2012) (same). This requirement is satisfied if the claim is presented in a

way that is "likely to alert the court to the claim's federal nature," *Daye*, 696 F.2d at 192, and the

state courts are "apprised of both the factual and the legal premises of the claim [the petitioner]

asserts in federal court," *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir. 1997) (alteration in original)

(internal quotation marks omitted); *see also Bermudez v. Conway*, No. 09-CV-1515, 2012 WL

3779211, at *8 (E.D.N.Y. Aug. 30, 2012) (same).  In other words, a state prisoner need not cite

"chapter and verse of the Constitution" to satisfy this requirement.  *Daye*, 696 F.2d at 194.

However, it is "not enough that all the facts necessary to support the federal claim were before

the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459

U.S. 4, 6 (1982) (citations omitted).  Rather, the claims must be made in such a way so as to give

the state courts a "fair opportunity to apply controlling legal principles to the facts bearing upon

his constitutional claim." *Id.* (internal quotation marks omitted).

  "Second, having presented his federal constitutional claim to an appropriate state court,

and having been denied relief, the petitioner must have utilized all available mechanisms to

secure [state] appellate review of the denial of that claim." *Klein*, 667 F.2d at 282; *see also*

*Pettaway v. Brown*, No. 09-CV-3587, 2010 WL 7800939, at *9 (S.D.N.Y. May 3, 2010) (same),

*adopted by* 2011 WL 5104623 (S.D.N.Y. Oct. 26, 2011).  In New York, "a criminal defendant

must first appeal his or her conviction to the Appellate Division, and then must seek further

review of that conviction by applying to the Court of Appeals for a certificate granting leave to

appeal." *Galdamez v. Keane*, 394 F.3d 68, 74 (2d Cir. 2005).  If the petitioner fails to exhaust

his or her state remedies through this entire appeal process, he or she may still fulfill the

exhaustion requirement by collaterally attacking the conviction via available state methods.  *See*

*Klein*, 667 F.2d at 282–83; *West v. Sheahan*, No. 12-CV-8270, 2014 WL 5088101, at *3

(S.D.N.Y. Sept. 18, 2014); *Sparks v. Burge*, No. 06-CV-6965, 2012 WL 4479250, at *4

(S.D.N.Y. Sept. 28, 2012); *Torres v. McGrath*, 407 F. Supp. 2d 551, 557 (S.D.N.Y. 2006);

*Rivera v. Conway*, 350 F. Supp. 2d 536, 544 (S.D.N.Y. 2004). For example, in New York a

defendant may challenge the conviction based on matters not in the record that could not have

been raised on direct appeal, *see* N.Y. Crim. Proc. Law § 440.10, but a defendant may not seek

collateral review of claims that could have been raised on direct appeal and were not, *see id.* §

440.10(2)(c); *see also O'Kane v. Kirkpatrick*, No. 09-CV-5167, 2011 WL 3809945, at *7

(S.D.N.Y. Feb. 15, 2011) ("Under New York law, all claims that are record-based must be raised

in a direct appeal . . . . It is only when a defendant's claim hinges upon facts outside the trial

record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10."),

*adopted by* 2011 WL 3918158 (S.D.N.Y. Aug. 25, 2011). In addition, New York permits only

one application for direct review. *See* N.Y. Court Rules § 500.20(a)(2); *Jimenez v. Walker*, 458

F.3d 130, 149 (2d Cir. 2006) ("[The petitioner] has already taken his one direct appeal [under

New York law] . . . ."). "New York procedural rules bar its state courts from hearing either

claims that could have been raised on direct appeal but were not, or claims that were initially

raised on appeal but were not presented to the Court of Appeals." *Sparks*, 2012 WL 4479250, at

*4. Accordingly, in these situations a petitioner no longer has any available state court remedy,

and the unexhausted claims are therefore deemed exhausted, but procedurally barred. *See*

*Carvajal v. Artus*, 633 F.3d 95, 104 (2d Cir. 2011) ("If a habeas applicant fails to exhaust state

remedies by failing to adequately present his federal claim to the state courts so that the state

courts would deem the claim procedurally barred, we must deem the claim procedurally

defaulted." (alteration and internal quotation marks omitted)); *see also Aparicio v. Artuz*, 269

F.3d 78, 90 (2d Cir. 2001) (noting the reality that deeming an unpresented claim to be exhausted

is "cold comfort"). A dismissal of a habeas petition on such grounds is a "disposition . . . on the merits." *Aparicio*, 269 F.3d at 90.

"An applicant seeking habeas relief may escape dismissal on the merits of a procedurally defaulted claim only by demonstrating 'cause for the default and prejudice' or by showing that he is 'actually innocent' of the crime for which he was convicted." *Carvajal*, 633 F.3d at 104 (quoting *Aparicio*, 269 F.3d at 90); *see also Dretke v. Haley*, 541 U.S. 386, 388 (2004) ("[A] federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default," or a showing that the petitioner "is actually innocent of the underlying offense . . . ."); *Harris v. Reed*, 489 U.S. 255, 263 n.9 (1989) ("[A] federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred."); *Acosta v. Artuz*, 575 F.3d 177, 188 (2d Cir. 2009) (holding that, because the petitioner could not "present his unexhausted claim of trial error to the state courts, . . . the claim [was deemed] procedurally barred"); *O'Kane*, 2011 WL 3809945, at *6, *8 (holding that habeas claims were deemed exhausted but nonetheless procedurally barred under New York law because petitioner had failed to raise the claims in his direct appeal).

### C. Analysis

#### 1. Exhaustion

##### a. Exhaustion of Sufficiency and Jury Charge Claims

Because the exhaustion analysis is the same for Petitioner's sufficiency and jury instruction claims, the Court will consider these two claims together. In order to exhaust his state court remedies, Petitioner was required to raise these claims in his leave application to the New York Court of Appeals. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999) (dismissing

as procedurally defaulted three claims that petitioner "pressed before the Appellate Court of Illinois," but failed to "include[] in his petition for leave to appeal to the Illinois Supreme Court"); *see also Aparicio*, 269 F.3d at 89–90 ("To satisfy § 2254's exhaustion requirement, a petitioner must present the substance of the same federal constitutional claim[s] that he now urges upon the federal courts to the highest court in the pertinent state." (alteration in original) (citation and internal quotation marks omitted)). Petitioner failed to do so here.

In his application to the New York Court of Appeals for leave to appeal, Petitioner argued at length about why his state speedy trial rights were violated, but made no mention of either of the other claims raised in the instant petition: that there was insufficient evidence to support the verdict and that he was denied a fair trial based on the jury charge in regard to the instructions about flight and consciousness of guilt. (*See* Resp.'s Mem. Ex. 13, at 1–4.) In his leave application, Petitioner argued: "In both the lower court and on appeal, the appellant sufficiently established that certain periods of time should not have been excluded in calculating the time between commencement of the criminal action and the People's announced readiness for trial." (*Id.* at 2.) Petitioner also argued: "The important question of law to be addressed by this court is whether the minimal attempts that were made to locate the appellant satisfy the due diligence requirement." (*Id.*) Petitioner then catalogued the state's efforts at finding Petitioner, arguing that such "perfunctory efforts to locate a defendant do not satisfy the due diligence requirement." (*Id.* at 3–4.)

Petitioner also attached to his leave application a copy of his Brief to the Appellate Division, Respondent's Brief to the Appellate Division, and the Appellate Division's ruling on his appeal. (*See id.* at 1; Pet'r's Objs. at unnumbered 12.) But in his leave application, Petitioner noted, "One issue of law, preserved in the trial court and raised by the appellant in the

16

intermediate appellate court [which] will be stressed [i]n this application[,] . . . was [whether] the appellant's right to a Speedy Trial was violated." (Resp.'s Mem. Ex. 13, at 1–2.)  Additionally, in his leave application Petitioner requested "that the appellant be given the opportunity to present these and other pertinent arguments to the Court of Appeals." (*Id.* at 4.)  This statement came at the end of three pages of arguments solely concerning Petitioner's state statutory speedy trial rights. In response to Petitioner's leave application, Respondent wrote a letter that addressed only Petitioner's state speedy trial rights, and then stated, "For the reasons set forth above and those in respondent's brief filed below, defendant's application for a further appeal should be denied." (*See generally* Resp.'s Mem. Ex. 14.)  In his objections to the R&R, Petitioner seizes on the fact that his application for leave to appeal included his Appellate Division brief, and argues that it would be inappropriate to find that because Petitioner's counsel highlighted one argument contained in that brief—the state speedy trial claim—that the other claims were not presented to the Court of Appeals. (Pet'r's Objs. at unnumbered 12.)

The case law does not support Petitioner's position.  In a case very similar to this one, the Second Circuit held in *Grey v. Hoke*, 933 F.2d 117 (2d Cir. 1991), that arguing one claim in an application for leave to appeal to the Court of Appeals and then appending a brief submitted to a lower court that contained the identified claim, as well as several others, did not fairly present the non-argued claims to the Court of Appeals. *See id.* at 120.  The Second Circuit reasoned:

> The fair import of petitioner's submission to the Court of Appeals, consisting of his brief to the Appellate Division that raised three claims and a letter to the Court of Appeals arguing only one of them, was that the other two had been abandoned. The only possible indication that the other two claims were being pressed was the inclusion of a lengthy brief originally submitted to another court. This did not fairly apprise the court of the two claims. We decline to presume that the New York Court of Appeals has a duty to look for a needle in a paper haystack. For a federal court to hold that a state court had the opportunity to rule on a constitutional claim as to which no ruling was requested, and then to rule on the merits of the claim

17

itself, would undermine the very considerations of comity that the rules of exhaustion were designed to protect.

*Id.* (citations and internal quotation marks omitted). *Grey* led to two lines of cases, one beginning with *Morgan v. Bennett*, 204 F.3d 360 (2d Cir. 2000), and the other with *Jordan v. Lefevre*, 206 F.3d 196 (2d Cir. 2000).

In *Morgan*, the Second Circuit found that an application for leave to appeal that appended briefs and requested review of "all issues outlined in defendant-appellant's brief and pro se supplemental brief" was sufficient for exhaustion of all the claims included in the two briefs. *See* 204 F.3d at 369–71 (italics omitted). The Second Circuit distinguished *Morgan* from *Grey* on several grounds. Most importantly, in *Morgan*, the petitioner sought review of "all issues" contained in the appended briefs, which, the Second Circuit reasoned, was "sufficiently specific" to alert the Court of Appeals that the petitioner sought review of these claims. *Id.* at 370–71. In *Grey*, by contrast, petitioner made no reference to claims in the brief but not specifically discussed in the leave application. *Id.*

The import of *Morgan* is that to preserve any claims made to intermediate appellate courts, a petitioner need only state in a reasonably clear fashion that he intends to press those claims. That the leave application might emphasize one of those claims will not be deemed to have abandoned the other claims, as long as it is made explicit to the Court of Appeals that he intends to press all of them. For example, in *Galdamez v. Keane*, the petitioner did not "specify particular claims in his application for leave to appeal, but simply enclosed a copy of the Appellate Division's decision affirming the conviction, and stated that the appellant . . . request[ed] leave to appeal to this [c]ourt[,] . . . [and] later provided the briefs that he had submitted to the Appellate Division." *Galdamez*, 394 F.3d at 75 (alterations and internal quotation marks omitted). The Second Circuit held that the petitioner had exhausted his claims

18

because, even though the leave application did not specifically request review of all issues, it nonetheless "reasonably could be construed only as a request for further appellate review of all issues in the attached briefs . . . ." *Id.* at 76–77. In so holding, the Second Circuit noted in particular that "[s]ubmitting appellate briefs with a terse letter requesting leave to appeal does not communicate to the Court of Appeals that it should focus on some claims to the exclusion of others." *Id.* at 76. Consistent with this line of cases, in *Gajadhar v. Ercole*, No. 09-CV-1964, 2010 WL 3036498 (S.D.N.Y. Aug. 4, 2010), a court in this district held that a petitioner exhausted his claims contained in an appended brief where his leave application focused on one issue but a footnote in his application explicitly stated that the petitioner sought leave to appeal the issues raised in the appended briefs and then specifically identified all of the issues raised in the briefs. *Id.* at *3.

On the other hand, the Second Circuit and district courts within the Second Circuit have held that appending briefs does not fairly apprise the New York Court of Appeals of claims within those briefs if the leave application focuses only on one claim and nothing explicit is said about preserving the other claims. In *Jordan*, the petitioner's application for leave to appeal to the Court of Appeals "forcefully argued" one claim, a *Batson* claim, and then asked "that he be given permission to appeal for all of these reasons and the reasons set forth in his Appellate Division Briefs." 206 F.3d at 198 (alterations and internal quotation marks omitted). In holding that this was insufficient to exhaust the claims contained in the brief other than the *Batson* claim, the Second Circuit reasoned as follows:

> Arguing a single claim at length and making only passing reference to possible other claims to be found in the attached briefs does not fairly apprise the state court of those remaining claims. We conclude, as did the district court, that arguing one claim in his letter while attaching an appellate brief without explicitly alerting the state court to each claim raised does not fairly present such claims for purposes of the exhaustion requirement underlying federal habeas jurisdiction. Petitioner's

19

counsel has the obligation to set out these arguments. Counsel may not transfer to the state courts the duty to comb through an applicant's appellate brief to seek and find arguments not expressly pointed out in the application for leave. Had appellant more clearly stated that he was pressing all of the claims raised in the attached brief, or had his letter made no argument in detail but rather only requested that the Court of Appeals consider and review all issues outlined in defendant-appellant's brief, the result here would be different and the remaining claims would have been fairly presented to the Court of Appeals.

*Id.* at 198–99 (citations, alterations, and internal quotation marks omitted).

Following *Jordan*, lower courts in the Second Circuit have held that claims not explicitly preserved in a leave application are unexhausted even where some reference is made to their presentation to the Appellate Division. *See, e.g., Chung v. Filion*, No. 03-CV-1913, 2007 WL 749725, at *3 (E.D.N.Y. Mar. 7, 2007) (holding that the petitioner did not present ineffective assistance and sufficiency of the evidence claims to the Court of Appeals where he submitted his brief to the Appellate Division, and wrote a letter noting that "'[o]n appeal, appellant raised several points, including the claim that he was denied effective assistance of trial counsel and that the evidence was insufficient' to support a conviction, but then proceeded to argue only that the trial court improperly denied suppression" (alteration in original)); *Fabricio v. Artus*, No. 06-CV-2049, 2007 WL 119462, at *3–4 (S.D.N.Y. Jan. 11, 2007) (holding that a petitioner's Confrontation Clause claim was unexhausted where he argued other claims explicitly in his leave application to the Court of Appeals, enclosed the parties' briefs to the Appellate Division, and stated that "'[i]n support of this application, [the petitioner] also relies on the briefs he submitted to the Appellate Division'" (first alteration in original)), *adopted by* 2009 WL 928039 (S.D.N.Y. Mar. 12, 2009); *Lopez v. Fischer*, No. 05-CV-2558, 2006 WL 2996548, at *5–6 (S.D.N.Y. Oct. 16, 2006) (holding that the petitioner's second, third, and fourth claims were unexhausted where his leave application argued his first claim and contained a footnote describing the petitioner's arguments below, but did not ask the Court of Appeals to review those claims); *Jamison v.*

*Berbary*, No. 01-CV-5547, 2002 WL 1000283, at \*15–19 (S.D.N.Y. May 15, 2002) (report and recommendation) (holding one of the petitioner's claims unexhausted where he argued certain claims at length and, with regard to the unexhausted claim, stated only, "'In sum, for the reasons set forth above and in [the petitioner's] briefs submitted along with this letter application, this [c]ourt should grant leave to appeal on each and every claim raised'").

> The Second Circuit has described the line between *Morgan* and *Jordan* as follows:

> References to attached briefs without more will preserve issues only if the Court of Appeals is clearly informed that the reference is asserting issues in those briefs as bases for granting leave to appeal. In *Morgan,* the language unmistakably requested review of each point in the Appellate Division brief. In *Jordan,* the words "for all of these reasons and the reasons set forth in [the] Appellate Division briefs" might as easily have been a reference to additional reasons for reviewing the *Batson* claim as an incorporation of other, different claims asserted in the lower court.

*Ramirez v. Attorney Gen.*, 280 F.3d 87, 97 (2d Cir. 2001) (alteration in original). The instant case falls on the *Jordan* side of the line. Petitioner did not merely attach his Appellate Division brief, nor did he explicitly seek review of "all issues" contained in the appended brief, *see Morgan*, 204 F.3d at 370–71; *Gajadhar*, 2010 WL 3036498, at \*3. Moreover, Petitioner made no explicit reference to his sufficiency of evidence or jury charge claims in his leave application, and, as in *Jordan*, Petitioner's reference to "other pertinent arguments," which followed a long discussion of one claim—the state statutory speedy trial claim—appeared to be a reference to other state speedy trial-related arguments raised in his brief. *See Galdamez*, 394 F.3d at 74–75 (describing *Jordan* and noting, in particular, that the "letter's concluding language might as easily have been a reference to additional reasons for reviewing the *Batson* claim as an incorporation of other, different claims asserted in the lower court" (internal quotation marks omitted)). Similarly, the statement at the beginning of Petitioner's leave application that the application addressed "[o]ne issue of law . . . [that] will be stressed [i]n this application" is

insufficient to give notice to the Court of Appeals that Petitioner intended to raise all of the claims contained in the appellate briefs. (Resp.'s Mem. Ex. 13, at 1.) Deciding otherwise would be to require the New York Court of Appeals to "look for a needle in a paper haystack." *Grey*, 933 F.2d at 120 (internal quotation marks omitted). Therefore, the Court concludes that Petitioner did not exhaust his sufficiency of the evidence and jury charge arguments in state court.

### b. Exhaustion of Speedy Trial Claim

#### i. Whether this Argument is Properly Before the Court

The next question the Court must address is whether it can consider whether Petitioner exhausted his Speedy Trial claim. In his Opposition to the Petition, Respondent did not argue that this claim was unexhausted, and focused his arguments on the merits of this claim. (*See* Resp.'s Mem. 34–40.) Specifically, Respondent argued that Petitioner's Speedy Trial claim, to the extent based only on a violation of state law, did not present a cognizable federal claim. (*Id.* at 36.) However, in his objections to Judge Yanthis's R&R, Respondent argued that Petitioner's federal constitutional speedy right was unexhausted and procedurally barred because it was not raised in Petitioner's application for leave to appeal. (*See* Resp.'s Objs. 1–2.) "Generally, courts do not consider new arguments and new evidence raised in objections to a magistrate judge's report and recommendation that were not raised, and thus were not considered, by the magistrate judge." *Jones v. Smith*, No. 09-CV-6497, 2012 WL 1592190, at *8 (S.D.N.Y. May 7, 2012) (internal quotation marks omitted). However, the considerations are different in the context of exhaustion.

As noted, "before a federal court can consider a habeas application brought by a state prisoner, the habeas applicant must exhaust all of his state remedies." *Carvajal*, 633 F.3d at 104;

22

*see also* 28 U.S.C. § 2254(b)(1)(A) ("An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that . . . the applicant has exhausted the remedies available in the courts of the State" where a state corrective process sufficient to protect the rights of the applicant is available). Before AEDPA came into effect, "a state was normally obligated to raise and preserve the procedural default defense," but "[a]t the same time, it was clear that a federal appellate court was not obligated to regard the prosecution's omission of the defense as an absolute waiver of the claim." *Carvajal*, 633 F.3d at 105 (alterations and internal quotation marks omitted) (citing *Trest v. Cain*, 522 U.S. 87, 89 (1997); *Granberry v. Greer*, 481 U.S. 129, 133 (1987)). However, under AEDPA, "[a] State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement." 28 U.S.C. § 2254(b)(3). Accordingly, the Second Circuit has held, "when a state's procedural default argument is predicated on a habeas applicant's failure to exhaust (as is the case here)," the Court "may consider such an argument for the first time on appeal unless it was *expressly* waived in the district court. This is a stringent requirement. Waiver by nature must be knowing and intentional; express waiver would seem to require that these features be made manifest." *Carvajal*, 633 F.3d at 105 (citation omitted).

Here, Respondent made no statement regarding exhaustion of the speedy trial claim in his initial opposition to the Petition, and raised the issue for the first time in his objections to the R&R. Therefore, there was no express or intentional waiver. *See Lurie v. Wittner*, 228 F.3d 113, 123 (2d Cir. 2000) (holding that even a statement by the state's counsel that the petitioner "also made these arguments. He did make these arguments in the Appellate Division" did not constitute an express waiver of the exhaustion claim (italics omitted)). Respondent has not

identified any case where a state raised an exhaustion argument for the first time in objections to a magistrate judge's R&R. However, the Court finds the reasoning in *Carvajal* to be persuasive in this case, and by analogy holds that because Respondent did not waive the exhaustion argument, the Court may consider it despite the fact that it was not raised before the magistrate judge.

### ii. Whether the Speedy Trial Claim was Exhausted

New York protects a defendant's speedy trial rights in two ways. The first, codified in N.Y. C.P.L. § 30.30, addresses how much time may elapse between the commencement of a criminal action and when the case is trial ready. As applied to this case, § 30.30 provides that the indictment is to be dismissed if, after six months of the commencement of the criminal action, the prosecution was not ready for trial. N.Y. Crim. Proc. Law § 30.30. When calculating the six months, time is excluded for a number of reasons, including time during which the defendant's "location is unknown and he is attempting to avoid apprehension or prosecution, or his location cannot be determined by due diligence," and time during which the defendant's "location is known but his presence for trial cannot be obtained by due diligence." *Id.* § 30.30(4)(c)(i). This provision is purely a creature of New York state statute and does not protect a federal constitutional right. *See Gibriano v. Attorney Gen.*, 965 F. Supp. 489, 492 (S.D.N.Y. 1997) ("Section 30.30 is a statutory time frame in which the People of the State of New York must be ready for trial." (internal quotation marks omitted)); *see also Cadilla v. Johnson*, 119 F. Supp. 2d 366, 374 (S.D.N.Y. 2000) ("Because C.P.L. § 30.30 is merely a state law provision requiring the prosecution to be ready for trial, a § 30.30 claim does not raise a federal constitutional claim."). Therefore, a § 30.30 claim is not cognizable in a federal habeas case. *See Dowling v. Fisher*, No. 11-CV-2025, 2014 WL 3611645, at *4 (E.D.N.Y. July 22, 2014); *Cox v. Bradt*, No. 10-CV-

24

9175, 2012 WL 2282508, at *25 (S.D.N.Y. June 15, 2012) (report and recommendation); *Smith v. LaClair*, No. 04-CV-4356, 2008 WL 728653, at *3 (S.D.N.Y. Mar. 17, 2008).

The second provision, N.Y. C.P.L. § 30.20, is a general speedy trial provision which provides that "[a]fter a criminal action is commenced, the defendant is entitled to a speedy trial," and that "[i]nsofar as is practicable, the trial of a criminal action must be given preference over civil cases; and the trial of a criminal action where the defendant has been committed to the custody of the sheriff during the pendency of the criminal action . . . preference over other criminal actions." N.Y. Crim. Proc. Law § 30.20. This statute "embod[ies] the federal constitutional right to a speedy trial[.]" *Gibriano*, 965 F. Supp. at 492 (internal quotation marks omitted); *see also Smith v. Maher*, 468 F. Supp. 2d 466, 473 (W.D.N.Y. 2006) (same); *People v. Anderson*, 488 N.E.2d 1231, 1234 (N.Y. 1985) (same).

Courts in the Second Circuit have held that raising a N.Y. C.P.L. § 30.30 claim in state court does not exhaust a federal constitutional speedy trial claim. *See, e.g., Smith v. LaClair*, No. 04-CV-4356, 2008 WL 728653, at *3 (S.D.N.Y. Mar. 17, 2008) ("Because C.P.L. § 30.30 is merely a state law provision requiring the prosecution to be ready for trial, a § 30.30 claim does not raise a federal constitutional claim." (internal quotation marks omitted)); *Edwards v. Mazzuca*, No. 00-CV-2290, 2007 WL 2994449, at *13 (S.D.N.Y. Oct. 15, 2007) ("[A] CPL § 30.30 claim is not the equivalent of a federal constitutional speedy trial claim made pursuant to the Sixth and Fourteenth Amendments; therefore, it cannot be reviewed in a federal habeas corpus proceeding."); *Delvalle v. Sabourin*, No. 00-CV-3302, 2002 WL 1000968, at *3 (S.D.N.Y. May 16, 2002) ("In his direct appeal in state court, [the petitioner] asserted a speedy trial claim citing N.Y. Crim. Proc. Law § 30.30, but making no mention whatsoever of the United States Constitution. It is well settled that a petitioner who raises only a statutory speedy

trial claim pursuant to N.Y. Crim. Proc. Law § 30.30 has not invoked the federal constitution and therefore has not exhausted a federal claim."); *Gibriano*, 965 F. Supp. at 492 ("[W]hen the petitioner twice raised his statutory speedy trial claim in the state court under Section 30.30, he did not effectively present to those courts the federal constitutional speedy trial claim that he raises now in this court." (internal quotation marks omitted)). By contrast, because N.Y. C.P.L. § 30.20 embodies the federal constitutional speedy trial right, raising that claim in state court can exhaust a federal constitutional speedy trial claim. *Cf. Mills v. Lempke*, No. 11-CV-440, 2013 WL 435477, at *51 (W.D.N.Y. Feb. 4, 2013) ("[The petitioner] did not cite C.P.L. § 30.20, the section of the statute that embodies the Sixth Amendment's constitutional guarantee to a speedy trial. Thus, [he] did not properly assert his constitutional right to a speedy trial at that point." (citation omitted)); *Woodard v. Berry*, No. 90-CV-1053, 1992 WL 106508, at *2 (E.D.N.Y. Apr. 24, 1992) ("[B]ecause the petitioner presented his 'speedy trial' claim in the state courts only as a claim under Section 30.30—rather than as a claim under the Sixth Amendment to the federal Constitution or as a claim under Section 30.20—he did not give the state courts a 'fair opportunity' to consider the federal question he now presents to this court.").

Respondent argues that, like his weight of the evidence claim and his jury instruction claim, Petitioner's federal constitutional speedy trial claim is actually unexhausted but should be deemed exhausted and procedurally barred. (*See* Resp.'s Objs. 1–2.) In particular, Respondent argues that Petitioner "failed to exhaust this issue since he never asserted his federal Speedy Trial Claim to the New York Court of Appeals." (*Id.* at 1.) According to Respondent, in his application for leave, Petitioner "narrowed his claim to assert a violation under New York Criminal Procedure Law 30.30 only." (*Id.*) According to Respondent, the principal case cited by Petitioner in his application for leave referred only to § 30.30. (*See id.*) Furthermore,

"[n]owhere in this leave application [did] [P]etitioner mention his constitutional right to a speedy

trial nor [did] he refer to any federal caselaw in support of this claim." (*Id.*)  For that reason,

Respondent argues that this third claim is also unexhausted. (*Id.* at 2.)  The Court agrees.

There are several ways Petitioner may have exhausted his federal speedy trial claim in his

leave application to the Court of Appeals.  Most obviously, he could have expressly raised the

claim.  Other than by clearly asserting a federal claim, he could have alerted the Court of

Appeals to his federal claim and therefore exhausted it through

> (a) reliance on pertinent federal cases employing constitutional analysis, (b)
> reliance on state cases employing constitutional analysis in like fact situations, (c)
> assertion of the claim in terms so particular as to call to mind a specific right
> protected by the Constitution, [or] (d) allegation of a pattern of facts that is well
> within the mainstream of constitutional litigation.

*Daye*, 696 F.2d at 194; *see also Carvajal*, 633 F.3d at 104 (same); *Babcock v. Heath*, No. 11-

CV-4631, 2014 WL 4979448, at *9 (S.D.N.Y. Oct. 3, 2014) (same); *Stanley v. Smith*, No. 12-

CV-6362, 2014 WL 5039444, at *10 (S.D.N.Y. Sept. 26, 2014) (same).

The first issue the Court will address is whether Petitioner clearly asserted a federal claim

to the Court of Appeals.  Petitioner's application for leave to appeal focused on his claim

pursuant to N.Y. C.P.L. § 30.30. (Resp.'s Mem. Ex. 13, at 2–4.)  Nowhere in Petitioner's leave

application did he so much as reference the Constitution, a federal constitutional speedy trial

claim, or N.Y. C.P.L. § 30.20. (*See generally id.*)  Instead, he referred only to § 30.30, the state

statutory provision. (*See id.* at 2.)  As discussed above, Petitioner did append his brief to the

appellate division. (*See id.* at 1.)  That brief, which may not have even contained enough

constitutional references to properly raise Petitioner's federal claim to the Appellate Division, is

insufficient to alert the Court of Appeals to his federal claim.  In his appeal to the Appellate

Division, Petitioner's speedy trial arguments focused on his state statutory claims and made only

27

passing references to the U.S. Constitution. In his argument about his speedy trial rights, which comes under the heading "INASMUCH AS THE PEOPLE DID NOT EXERT THE TYPE OF 'CREDIBLE, VIGOROUS ACTIVITY' REQUIRED BY CASE LAW IN DEFINING THE TERM 'DUE DILIGENCE' THE COURT BELOW ERRED WHEN IT DENIED DEFENDANT'S SPEEDY TRIAL MOTION BROUGHT PURSUANT TO CPL 30.30 TO DISMISS THE INDICTMENT." (Resp.'s Mem. Ex. 10 (Pet'r's Appellate Brief), at 34.) Almost all of Petitioner's seven-page speedy trial argument exclusively addressed Petitioner's New York statutory speedy trial right. (*See id.* at 34–40.) Petitioner merely made one passing reference to his constitutional speedy trial claim on the sixth page of that section. (*See id.* at 39.) In particular, he stated, "In addition to being deprived of his statutory right to a speedy trial, [Petitioner] also argues that he was deprived of his constitutional right to speedy trial as codified in CPL 30.20. As discussed above in the description of the pre-indictment efforts of the police, it is submitted that the approximate four-month period preceding the filing of the felony complaint was not utilized by a good faith investigation by Detective Mendez and the court below erred in it's [sic] finding of such." (*Id.*)

Expecting the Court of Appeals to read this leave application, which does not specifically alert the court to other claims, then pour over his 41-page appellate brief and find a two-sentence reference to his constitutional speedy trial rights would be requiring the Court of Appeals to look "for a needle in a paper haystack." *Grey*, 933 F.2d at 120 (internal quotation marks omitted). The law requires more to preserve a federal constitutional claim. *See Calderon v. Perez*, No. 10-CV-2562, 2011 WL 293709, at *18 n.29 (S.D.N.Y. Jan. 28, 2011) ("[I]n his reply brief before the First Department, [the petitioner] made passing references to his federal speedy trial right, but argued only under N.Y. C.P.L. § 30.30 speedy trial provisions and employed only state cases

and state law analysis. Such references, without more, are insufficient to exhaust [his] federal speedy trial claim." (citation omitted)), *adopted by* 2011 WL 1405029 (S.D.N.Y. Apr. 5, 2011); *Yampierre v. Phillips*, No. 05-CV-2249, 2010 WL 744526, at *10 (E.D.N.Y. Mar. 1, 2010) (noting that the Second Circuit has not addressed whether passing reference is sufficient for exhaustion in the Sixth Amendment context and collecting district court cases holding it was not); *Arce v. West*, No. 04-CV-6607, 2009 WL 1956175, at *4 (W.D.N.Y. July 6, 2009) ("[T]he vague reference to the 'constitutional right to a speedy trial,' without appropriate argument, and with the only argument being under the state statutory speedy trial right of N.Y. CPL § 30.30, was not sufficient to put the state appellate court on notice of the federal constitutional basis of the claim and to exhaust the federal claim."); *Holden v. Miller*, No. 00-CV-926, 2000 WL 1121551, at *7 (S.D.N.Y. Aug. 8, 2000) (report and recommendation) (noting that the line of cases holding that a passing reference to the Constitution is sufficient has not been extended to speedy trial claims and holding that a "passing reference to the Sixth Amendment should not change the result [and be sufficient to exhaust the claim] where . . . the only argument in [the] petitioner's state appellate brief [was] based entirely on the different state statutory CPL § 30.30 speedy trial claim").

The next way that Petitioner could have exhausted his federal constitutional speedy trial claim is through reliance on pertinent federal cases employing the constitutional analysis. *See Daye*, 696 F.2d at 194. In Petitioner's leave application, he cited two cases: *People v. Washington*, 372 N.E.2d 795 (N.Y. 1977), and *People v. Quiles*, 574 N.Y.S.2d 188 (App. Div. 1991). (*See* Resp.'s Mem. Ex. 13). Both of these cases are New York state cases. Since Petitioner did not cite any federal cases, he did not satisfy his exhaustion requirement through reliance on pertinent federal cases pursuant to *Daye*.

Petitioner also could have exhausted his claims through reliance on state cases employing constitutional analysis in like fact situations. *See Daye*, 696 F.2d at 194. Petitioner described N.Y. C.P.L. § 30.30 as requiring the People to be ready for trial within six months of commencement of the criminal action and only permitting time to be excluded when the defendant is absent or unavailable if the People demonstrate due diligence in locating the defendant. (Resp.'s Mem. Ex. 13, at 2.) The question, according to Petitioner, was whether the police exercised due diligence. (*Id.*) Petitioner then cited *Washington* as the New York standard for whether the "minimal attempts that were made to locate [Petitioner] satisfy the due diligence requirement." (*Id.*) Petitioner also cited *Quiles* in support of the proposition that "once a defendant makes a prima facia [sic] showing that the People exceeded the six month period, the burden of proof falls on the People to demonstrate that the delay of greater than six months should be excluded," and for the proposition that "minimal efforts to locate a defendant and secure his presence in court will not satisfy the due diligence standard[.]" (*Id.*) Finally, Petitioner again cited *Washington* as establishing that "the People must undertake credible, vigorous activity" to show due diligence. (*Id.* (internal quotation marks omitted).)

It is evident that Petitioner relied on these two cases merely for their holdings regarding the state statutory speedy trial right, not for any authority on the federal constitutional right to a speedy trial. Furthermore, the cited cases do not employ any constitutional analysis. In *Washington*, the New York Court of Appeals in a three-paragraph opinion, which did not cite any case law, solely addressed whether a seven-month delay between indictment and arrest violated the New York statutory speedy trial provision codified in N.Y. C.P.L. § 30.30, or whether the People showed that the case fell under a statutory exception. 372 N.E.2d at 795. In addressing this question, the *Washington* court engaged in no constitutional analysis. In *Quiles*,

30

the Appellate Division, in another three-paragraph decision, addressed whether due diligence under § 30.30 was satisfied and whether a 1984 amendment to the statutory speedy trial right codified in § 30.30 changed the due diligence requirement. 574 N.Y.S.2d at 188–89. Furthermore, the one case that is cited in *Quiles, People v. Jackson*, 541 N.Y.S.2d 478 (App. Div. 1989), similarly addressed only the state statutory speedy trial right codified in § 30.30 and did not employ any constitutional analysis. *See Jackson*, 541 N.Y.S.2d at 478–79. Because Petitioner relied only on state law cases that employ state statutory analysis, his citation of *Washington* and *Quiles* did not fairly alert the New York Court of Appeals to his federal constitutional claim and did not exhaust his claim.

Next, Petitioner could have exhausted his claim if it was asserted to the Court of Appeals in terms so particular as to call to mind a specific right protected by the Constitution. "[T]he state court will be alerted to the constitutional nature of a claim if the defendant has claimed the deprivation of a particular right specifically protected by the Constitution." *Daye*, 696 F.2d at 193. However, courts within the Second Circuit have held that raising a § 30.30 state statutory speedy trial claim does not alert the state court to a federal constitutional speedy trial right. *See, e.g., Davis v. Lee*, No. 13-CV-3827, 2015 WL 1379024, at \*11 (S.D.N.Y. Mar. 25, 2015) (holding that a leave application that asserted only a violation of New York's speedy trial statute "failed to alert the state courts that he was seeking relief on federal grounds"); *Allison v. Khahaifa*, No. 10-CV-3453, 2011 WL 3298876, at \*7 (E.D.N.Y. Aug. 1, 2011) (holding that the petitioner's "assertion of a C.P.L. § 30.30 claim [did not] constitute the substantial equivalent" of a federal speedy trial claim (internal quotation marks omitted)); *White v. Conway*, No. 07-CV-1175, 2011 WL 1315592, at \*9 (N.D.N.Y. Mar. 31, 2011) ("A claim based upon a violation of section 30.30 . . . does not raise a federal constitutional issue warranting federal habeas relief.");

*Cadilla*, 119 F. Supp. 2d at 374 ("Because C.P.L. § 30.30 is merely a state law provision requiring the prosecution to be ready for trial, a § 30.30 claim does not raise a federal constitutional claim."). And, because Petitioner's leave application used language addressed to his state statutory speedy trial claim, he cannot now claim that he framed his appeal as one presenting both state and federal speedy trial claims. *See Robinson v. Cunningham*, No. 09-CV-1904, 2011 WL 7046020, at *4 (E.D.N.Y. Jan. 4, 2011) (holding that the petitioner "failed to properly raise a constitutional claim for state court review" where he "relied solely on state cases discussing the statutory requirements and burdens under N.Y.C.P.L. § 30.30 and only presented facts regarding chargeable time against the prosecution under N.Y.C.P.L. § 30.30"), *adopted sub nom. Robinson v. Superintendent, Green Haven Corr. Facility*, No. 09-CV-1904, 2012 WL 123263 (E.D.N.Y. Jan. 17, 2012).

Finally, Petitioner could have exhausted his claims by "alleg[ing] . . . a pattern of facts that is well within the mainstream of constitutional litigation." *Daye*, 696 F.2d at 194. A federal constitutional speedy trial is analyzed under the factors set forth in *Barker v. Wingo*, 407 U.S. 514 (1972). The Second Circuit has described this analysis as follows.

> The Supreme Court's decision in *Barker* . . . sets forth the four factors that must be considered in analyzing whether a defendant's constitutional right to a speedy trial has been violated: (1) the length of the delay; (2) the reasons for the delay; (3) whether the defendant asserted his right in the run-up to the trial; and (4) whether the defendant was prejudiced by the failure to bring the case to trial more quickly. These factors "must be considered together with such other circumstances as may be relevant," and "have no talismanic qualities." Rather, they require courts to "engage in a difficult and sensitive balancing process."

*United States v. Cain*, 671 F.3d 271, 296 (2d Cir. 2012) (citations omitted) (quoting *Barker*, 407 U.S. at 530, 533). As stated above, New York has codified this federal constitutional speedy trial right in N.Y. C.P.L. § 30.20. The analysis conducted by New York courts of § 30.20 claims

32

is substantially similar to the *Barker* analysis described above. The New York test, as

enumerated in *People v. Taranovich*, 335 N.E.2d 303 (N.Y. 1975), requires consideration of

> (1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether or not there has been an extended period of pretrial incarceration; and (5) whether or not there is any indication that the defense has been impaired by reason of the delay.

*Id.* at 306.

The facts alleged by Petitioner in his leave application to the New York Court of Appeals

concerned the People's "efforts at locating [Petitioner.]" (Resp.'s Mem. Ex. 13, at 3.) In

addition to cataloging the efforts made (or not made) by the police, Petitioner noted that an arrest

warrant was issued on April 20, 2005 and that Petitioner was finally arrested on June 29, 2006.

(*Id.*) Other than that, Petitioner merely argued that the "efforts made by the People to locate

[Petitioner] were cursory at best" and that these "perfunctory efforts . . . do not satisfy the due

diligence requirement." (*Id.* at 4.) These factual allegations concern two of the *Taranovich*

factors—the extent of the delay and the reason of the delay—but Petitioner alleged no facts

about the nature of the underlying charge, the extent of pretrial incarceration, or prejudice to the

defense due to the delay under *Taranovich* or the *Barker* factors of whether Petitioner asserted

his right in the run-up to the trial or asserted prejudice due to the delay. Because Petitioner did

not allege facts concerning several factors of the relevant tests and because the constitutional test

requires balancing of all factors, Petitioner's claims cannot be said to have alleged a pattern of

facts well within the mainstream of constitutional litigation, but rather alleged facts "not

theretofore commonly thought to involve constitutional constraints . . . ." *Daye*, 696 F.2d at 193.

Therefore, there is "little reason" to believe the Court of Appeals was alerted to the supposed

constitutional nature of his speedy trial claim. *Id.*; *see also Phillips v. Warden, Clinton Corr.*

*Facility*, No. 08-CV-1887, 2010 WL 1189381, at *7 n.5 (E.D.N.Y. Mar. 29, 2010) ("[T]he state

speedy trial right under § 30.30 is distinct from the federal constitutional speedy trial right and involves a different factual and legal analysis. For this reason, when [the] petitioner raised his statutory speedy trial claim at the appellate level, he did not present a federal claim to those courts."); *Vasquez v. Warden of Facility*, No. 06-CV-4366, 2008 WL 6653635, at *3 (S.D.N.Y. Sept. 4, 2008) (report and recommendation) ("Although [the petitioner's] appellate attorney raised the speedy trial claim on direct appeal, the claim was based exclusively upon C.P.L. § 30.30 and New York State case law. It did not implicate the United States Constitution, Supreme Court cases, or other federal cases."); *Maher*, 468 F. Supp. at 470 ("[The petitioner's] brief . . . referred only to C.P.L. § 30.30, dealt only with state statutory ready-for-trial issues under C.P.L. § 30.30, and employed only state cases and state law analysis; there is no reference in the table of authorities or in the rest of the brief of to any federal case law or to the federal constitution. Clearly, the claim [the petitioner] raised in state court rested solely on state procedural grounds."); *Walker v. Bennett*, 262 F. Supp. 2d 25, 31 (W.D.N.Y. 2003) ("[The petitioner's] appellate brief relying solely on C.P.L. § 30.30 is . . . not sufficient to exhaust a federal constitutional speedy trial claim."); *Rodriguez v. Miller*, No. 96-CV-4723, 1997 WL 599388, at *2 (S.D.N.Y. Sept. 29, 1997) ("[A] CPL section 30.30 claim does not present the state court with the same factual and legal issues as a Sixth Amendment speedy trial claim. A Section 30.30 claim focuses on the calculation of certain time periods that should be excluded from the time within which the people must be ready for trial, whereas a Sixth Amendment speedy trial claim focuses on different issues and requires a different presentation.").

### c. All Three Claims are Deemed Exhausted and Procedurally Barred

It would be futile to dismiss Petitioner's claims without prejudice to allow him to exhaust these claims because he is barred from doing so under state law, either on direct review or by

34

collateral attack. *See Grey*, 933 F.2d at 120 ("For exhaustion purposes, 'a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred.' In such a case, a petitioner no longer has 'remedies available in the courts of the State' within the meaning of 28 U.S.C. § 2254(b)." (citations omitted) (quoting *Harris*, 489 U.S. at 263 n.9)); *see also Smith v. Capra*, No. 13-CV-2104, 2013 WL 6501693, at *6 (S.D.N.Y. Dec. 11, 2013) ("If a petitioner with an unexhausted claim would not be permitted to return to state court to exhaust his claims because no state corrective procedure remains available, a federal court may deem the unexhausted claim exhausted." (alterations and internal quotation marks omitted)); *Holguin v. Lee*, No. 13-CV-1492, 2013 WL 3344070, at *4 n.7 (S.D.N.Y. July 3, 2013) ("[P]rocedurally defaulted claims are also deemed 'exhausted' for purposes of federal review, despite the fact that they may never have actually been presented to a state court."); *Hayward v. Brown*, No. 09-CV-6495, 2010 WL 2629037, at *26 (S.D.N.Y. July 1, 2010) (noting that "a petitioner no longer has remedies available in the courts of [a] [s]tate within the meaning of 28 U.S.C. § 2254(b)" when "it is clear that the state court would hold the claim procedurally barred" (internal quotation marks omitted)). That Petitioner would not be permitted to return to state court to exhaust these claims is, as required, "firmly established and regularly followed by the [New York] courts." *Hayward*, 2010 WL 2629037, at *11 (internal quotation marks omitted). First, Petitioner could not seek leave to appeal to the New York Court of Appeals for a second time because New York law permits only one such application. *See* N.Y. Ct. R. § 500.20(a)(2) (indicating that "only one application" for leave to appeal a criminal conviction "is available"). Second, the timeframe in which Petitioner could have sought reargument or reconsideration of the Court of Appeals' May 26, 2010 denial of his application for leave to amend has long since passed. *Id.* § 500.20(d) ("Unless otherwise

35

permitted by the assigned Judge, the reargument or reconsideration request shall be served not later than 30 days after the date of the certificate determining the application of which reargument or reconsideration is sought."). Third, Petitioner cannot now collaterally attack the conviction on these grounds because they could have been, and were, raised on direct appeal. *See* N.Y. Crim. Proc. Law § 440.20(2) (providing that a motion to set aside a judgment must be denied "when the ground or issue raised thereupon was previously determined on the merits upon an appeal from the judgment or sentence, unless since the time of such appellate determination there has been a retroactively effective change in the law controlling such issue"); *see also Garrett v. Superintendent of Bedford Hills Corr. Facility*, No. 10-CV-3093, 2013 WL 6199971, at *2 (E.D.N.Y. Nov. 27, 2013) ("[A] C.P.L. § 440.10 motion may not be employed as a substitute for direct appeal when defendant was in a position to raise an issue on appeal or could readily have raised it on appeal but failed to do so" (ellipses and internal quotation marks omitted)); *Newborn v. Smith*, No. 09-CV-4844, 2013 WL 504391, at *5 (E.D.N.Y. Feb. 7, 2013) ("New York law permits a defendant to collaterally attack a judgment of conviction obtained in violation of his constitutional rights but requires that any such motion be denied where the defendant unjustifiably failed to raise the constitutional violation on direct appeal, despite the availability of a sufficient record." (citation omitted)); *O'Kane*, 2011 WL 3809945, at *7 ("Under New York law, all claims that are record-based must be raised in a direct appeal. . . . It is only when a defendant's claim hinges upon facts outside the trial record, that he may collaterally attack his conviction by bringing a claim under CPL § 440.10"); *Cruz v. Berbary*, 456 F. Supp. 2d 410, 414 & n.1 (W.D.N.Y. 2006) (finding claims to be exhausted but procedurally barred when the respondent argued that the petitioner had not raised them in his appeal but had pressed them through his N.Y. C.P.L. § 440.10 motion); *Hogan v. West*, 448 F.

36

Supp. 2d 496, 506–07 (W.D.N.Y. 2006) ("[A] New York court must deny a § 440.10 motion where the movant unjustifiably failed to raise the constitutional violation on direct appeal despite a sufficient record to have permitted such an appeal."). Therefore, the claim is deemed exhausted, but procedurally barred. *See Calderon*, 2011 WL 293709, at *19 ("For exhaustion purposes, a federal habeas court need not require that a federal claim be presented to a state court if it is clear that the state court would hold the claim procedurally barred . . . Consequently, such procedurally barred claims are deemed exhausted by the federal courts." (citations, footnote, and internal quotation marks omitted)); *Maher*, 468 F. Supp. 2d at 471 ("Because he failed to raise his claim in state court and no longer may do so, his claim—although deemed exhausted—is procedurally defaulted."); *Walker*, 262 F. Supp. 2d at 29 ("An unexhausted claim will be deemed exhausted if state procedural rules bar the petitioner from raising the claim before the New York Court of Appeals.").

Petitioner has not made "the showing necessary to overcome such a bar, namely 'cause for the default and actual prejudice as a result of the alleged violation of federal law,' or that 'failure to consider [his] claims will result in a fundamental miscarriage of justice.'" *Acosta*, 575 F.3d at 188 (alteration in original) (quoting *Coleman v. Thompson*, 501 U.S. 722, 750 (1991)); *see also Richardson v. Superintendent of Mid-Orange Corr. Facility*, 621 F.3d 196, 201–02 (2d Cir. 2010) ("Because [the petitioner] shows no cause for or prejudice from the failure to raise the claim, and failing to consider it will not result in a 'fundamental miscarriage of justice,' his claim cannot proceed."); *Dhaity v. Warden*, 5 F. Supp. 3d 215, 224 (D. Conn. 2014) ("If the petitioner can . . . show no cause for or prejudice from the failure to raise the claim, and failing to consider it will not result in a 'fundamental miscarriage of justice,' his claim cannot proceed." (some internal quotation marks omitted)).

First, Petitioner has not attempted to show "cause" for his procedural default. (*See generally* Pet'r's Objs.; Letter from Pet'r to Court (Sept. 9, 2013) (Dkt. No. 29).) In this regard, the Court notes that "[i]gnorance or inadvertence will not constitute 'cause.'" *Washington v. James*, 996 F.2d 1442, 1447 (2d Cir. 1993). Second, Petitioner has not demonstrated "prejudice." While Petitioner alleges that he suffered prejudice in his objections to the R&R, a close reading shows that what he is addressing is the prejudice he alleges as a result of the alleged violation of his right to a speedy trial, one of the factors to be considered on the merits of such an argument. But, he does not "demonstrate that the alleged constitutional error worked to [his] '*actual* and substantial disadvantage.'" *Van Stuyvesant v. Conway*, No. 03-CV-3856, 2007 WL 2584775, at *15 (S.D.N.Y. Sept. 7, 2007) (emphasis in original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)). Therefore, Petitioner does not succeed in making a showing necessary to overcome the procedural default bar based on cause and prejudice. Petitioner similarly does not succeed in his allegation that a failure to consider his claims "will result in a fundamental miscarriage of justice." *Acosta*, 575 F.3d at 188 (internal quotation marks omitted). Indeed, Petitioner merely makes a bare allegation that it would be unfair for the Court to bar his claims and that declining to consider the constitutional violations he alleges would be a miscarriage of justice. (*See* Pet'r's Objs. at unnumbered 12.) This is insufficient. To show that a "fundamental miscarriage of justice" would occur without review requires clear and convincing evidence that "but for a constitutional error, no reasonable juror would have found the petitioner guilty." *Washington*, 996 F.2d at 1447 (alterations and internal quotation marks omitted). Petitioner provides no evidence that this is the case, let alone clear and convincing evidence to that effect. Therefore, the Court deems these claims exhausted and procedurally barred.

## 2. Merits of the Speedy Trial Claim

Even if Petitioner had exhausted his speedy trial claim, he still would not be entitled to relief. As noted above, the Appellate Division denied Petitioner's constitutional speedy trial claim, determining that Petitioner's "right to a speedy trial was not violated." *Parrish*, 898 N.Y.S.2d at 553. Thus, under the standard of review applicable to habeas petitions, the Court must determine whether the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or, alternatively, "(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As noted above, the only speedy trial claim cognizable in a federal habeas proceeding is a federal constitutional speedy trial claim; Petitioner's state § 30.30 claim does not raise an issue that could warrant habeas relief.

As explained above, under *Barker*, when considering if a criminal defendant's constitutional right to a speedy trial was violated, courts are to consider the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530. The Supreme Court noted in *Barker* that that courts may express these factors in different ways. *Id.* at 530. Indeed, in New York, when evaluating federal speedy trial claims, state courts consider the factors set forth in *Taranovich*, which are, as noted above, "(1) the extent of the delay; (2) the reason for the delay; (3) the nature of the underlying charge; (4) whether . . . there has been an extended period of pretrial incarceration; and (5) whether . . . there is any indication that the defense has been impaired by reason of the delay." 335 N.E.2d at 306. "Although the *Taranovich* factors and the *Barker* factors are not identically phrased, they are essentially identical tests." *Brown v. Perez*, No. 13-CV-4615, 2013 WL 5913306, at *9

39

(S.D.N.Y. Oct. 31, 2013) (internal quotation marks omitted), *adopted by* 2014 WL 5343309

(S.D.N.Y. Oct. 21, 2014); *see also Holguin v. Lee*, No. 13-CV-1492, 2014 WL 5508331, at *16

n.13 (S.D.N.Y. Oct. 31, 2014) (report and recommendation) ("The standard articulated in

*Taranovich* has been treated as the functional equivalent of the federal test articulated in

[*Barker*]."). Thus, the state court's use of the *Taranovich* test itself did not violate clearly

established federal law. *See Brown*, 2013 WL 5913306, at *10 (holding that the state court's

"analysis under *Taranovich* in substance was an analysis under *Barker* and therefore not contrary

to established Supreme Court Precedent" (internal quotation marks omitted)); *Gathers v. New*

*York*, No. 11-CV-1684, 2012 WL 71844, at *13 (E.D.N.Y. Jan. 10, 2012) ("[A]pplication of the

*Taranovich* factors is not 'contrary to' the federal law clearly established by *Barker*."); *Garcia v.*

*Annetts*, No. 08-CV-736, 2011 WL 4810012, at *6 (N.D.N.Y. Sept. 1, 2011) ("[T]he Appellate

Division's utilization of the *Taranovich* factors[,] which do not contradict the *Barker* factors[,]

was not 'contrary to' clearly established federal law as established by the Supreme Court"

(alterations, ellipses, and some internal quotation marks omitted)), *adopted by* 2011 WL

4814913 (N.D.N.Y. Oct. 11, 2011); *Williams v. Mazzuca*, No. 02-CV-9131, 2007 WL 541699, at

*3 (S.D.N.Y. Feb. 20, 2007) (noting that, "while the *Taranovich* factors applied by the state

court differ slightly from those set forth in *Barker*, they do not contradict the *Barker* factors" and

accordingly concluding that "the state court's decision was not 'contrary to' clearly established

federal law as established by the Supreme Court.").

Nor was the Appellate Division's decision contrary to or an unreasonable application of

clearly established federal law. Under *Barker*, "[t]he length of the delay is to some extent a

triggering mechanism." 407 U.S. at 530. That is, "[u]ntil there is some delay which is

presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the

balance." *Id.* "The Second Circuit has noted that there is a general consensus that a delay of

over eight months meets this standard, while a delay of less than five months does not." *United*

*States v. Ostroff*, 340 F. Supp. 2d 362, 366 (S.D.N.Y. 2004) (internal quotation marks omitted);

*see also Fisher v. Superintendent*, No. 12-CV-6703, 2014 WL 128015, at *15-16 (S.D.N.Y. Jan.

14, 2014) (holding that a ten month delay "was just beyond [the Second] Circuit's outer

boundary of eight months for presumptive prejudice"); *United States v. Briggs*, No. 10-CR-184,

2011 WL 3799933, at *3 (W.D.N.Y. Aug. 29, 2011) ("A delay in excess of eight months

constitutes presumptive prejudice."). A defendant's Sixth Amendment speedy trial right "is

triggered by arrest, indictment, or other official accusation." *See United States v. Moreno*, 789

F.3d 72, 78 (2d Cir. 2015) (internal quotation marks omitted). Here, Petitioner asserts that the

delay between the filing of the felony complaint on April 20, 2005 and his arrest on or around

July 12, 2006 was unduly prejudicial. (*See* Pet'r's Objs. at unnumbered 6–11.) This roughly

fifteen month period exceeds the outer boundary of eight months for presumptive prejudice, and

thus further inquiry is warranted.

     The next factor to consider is the reason for the delay. Petitioner argues that the state is

responsible for this delay, while Respondent argues that the Yonkers Police Office was diligent

and should not be held responsible for this delay. (Pet'r's Traverse at unnumbered 3, 6–20 (Dkt.

No. 24); Resp.'s Mem. 34–40; Resp.'s Objs. at unnumbered 2.) As noted above, the state court

made the following factual findings, which may only be dismissed by clear and convincing

evidence: that the pre-indictment delay "was not so unreasonable as to establish a violation of

[Petitioner's] constitutional right to a speedy trial" and that, with respect to his state speedy trial

claim, "427 days of the . . . delay from . . . April 20, 2005 to July 12, 2006 was due to

[Petitioner's] absence," and that "the Yonkers Police Department made diligent efforts to locate

him during that period," that "he was not incarcerated during this period," and that Petitioner made no "claim of resultant prejudice." (Resp.'s Mem. Ex. 7 (Decision & Order), at 20.) Petitioner did put forth some evidence that could rebut the finding that the Police Department made diligent efforts to try to find him. Petitioner's rap sheet as of July 13, 2006 stated that his address between March 5, 2004 and July 12, 2006 was 145 Elm Street, Yonkers, NY. (Pet'r's Traverse Ex. 1 (Rap Sheet).)[5] However, Detective Mendez testified he did not look for Petitioner at that address. (Tr. of Hearings Before Trial at 324 (Indictment No. 485-2005) (Feb. 27, 2007).) And Petitioner's half-brother testified that before Petitioner went to Florida he lived at 145 Elm Street with his girlfriend. (*See* Tr. of Trial at 589, 591 (Indictment No. 485-2005) (Apr. 30, 2007).) "[T]he Government has an affirmative constitutional duty to 'make a diligent good faith effort' to promptly bring a defendant to trial," *United States v. Phalom*, No. 08-CR-6, 2013 WL 3821757, at *3 (W.D.N.Y. July 23, 2013) (quoting *Smith v. Hooey*, 393 U.S. 374, 383 (1969)), which includes "an obligation to 'exercise due diligence in attempting to locate and apprehend the accused, *even if he is a fugitive who is fleeing prosecution*,'" *id.* (quoting *Rayborn v. Scully*, 858 F.2d 84, 90 (2d Cir. 1988) (emphasis added)). Therefore, the Court will assume without deciding that Petitioner has rebutted the state court's factual finding by clear and convincing evidence, and that the Government largely caused the delay.

When considering a delay caused by the Government, courts are to consider the reason behind the delay. Under *Barker*, "different weights should be assigned to different reasons" for

---

[5] The Court notes that "[i]n reviewing an issue that was adjudicated on the merits in state court, a federal court 'is limited to the record that was before the state court that adjudicated the claim on the merits.'" *Gathers*, 2012 WL 71844, at *14 (quoting *Cullen*, 563 U.S. 170, 131 S. Ct. at 1398). This evidence was before the state trial court. (*See* Tr. of Hearings Before Trial at 322–24 (Indictment No. 485-2005) (Feb. 27, 2007) (introducing the rap sheet into evidence and discussing the addresses listed on it).)

delay. 407 U.S. at 531. A "deliberate delay to hamper the defense weighs heavily against the prosecution . . . ." *United States v. Paul*, 634 F.3d 668, 674 (2d Cir. 2011) (internal quotation marks omitted); *see also Vermont v. Brillon*, 556 U.S. 81, 90 (2009) (same). "In contrast, delay caused by the defense weighs against the defendant . . . ." *Brillon*, 556 U.S. at 90. "Between diligent prosecution and bad-faith delay, official negligence in bringing an accused to trial occupies the middle ground." *Doggett v. United States*, 505 U.S. 647, 656–57 (1992). "Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Id.* at 657; *see also United States v. Saric*, No. 95-CR-661, 2011 WL 31079, at *5 (S.D.N.Y. Jan. 4, 2011) ("[T]he Supreme Court [has] emphasized[] that neutral reasons for a delay, such as negligence on the part of the prosecution or overcrowded courts, should be weighed less heavily than any deliberate attempt to delay the trial. These neutral reasons should nevertheless be considered, however, because the ultimate responsibility for such circumstances must rest with the government." (citation and internal quotation marks omitted)); *United States v. Valiente-Mejia*, No. 04-CR-772, 2009 WL 3401210, at *7–8 (S.D.N.Y. Oct. 19, 2009) (considering apportionment of blame for post-indictment delay in context of second *Barker* factor); *Ostroff*, 340 F. Supp. at 367 ("Where the Government intentionally delays in order to gain an advantage at trial, this factor weighs heavily against the Government. However, even where the delay is caused by the Government's mere negligence, this factor must still weigh against the Government, albeit less heavily, because the Government bears ultimate responsibility. The Government can justify the delay where there is a valid reason, or it is caused by the defendant." (citations and internal quotation marks omitted)). Here, even if the Court were to conclude that

Petitioner had shown that the Government was not diligent in attempting to locate him, at most there is evidence of negligence on the part of the Government; there is no evidence of bad faith or deliberate delay in order to obtain a tactical advantage, and Petitioner points to none. *See Phalom*, 2013 WL 3821757, at *3 (holding that "[b]ad faith occurs when the Government deliberately attempts to hamper the defense," and that absent proof of such, "the delay amounts to negligence").

The third factor under *Barker* is whether Petitioner asserted his right to a speedy trial in "due course." *Doggett*, 505 U.S. at 651. Here, Petitioner timely asserted this right, as his counsel made a motion to dismiss the Indictment based on a violation of his speedy trial right on October 29, 2006, as part of his omnibus motion for pre-trial relief. (Resp.'s Mem. Ex. 2 (Motion).)

The final factor to be considered is prejudice to the Petitioner. The Supreme Court has instructed that courts are to consider prejudice in light of three interests the speedy trial right is designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532; *see also United States v. Alvarez*, 541 F. App'x 80, 84 (2d Cir. 2013) (same); *Wilson v. Bradt*, No. 13-CV-6937, 2014 WL 4116960, at *17 (S.D.N.Y. Aug. 20, 2014) (same); *United States v. Guzman*, No. 11-CR-1015, 2013 WL 3305308, at *2 (S.D.N.Y. July 1, 2013) (same). Petitioner did not suffer the first type of prejudice as a result of the delay, as the delay was in securing his arrest. Nor did he suffer anxiety and concern as a result of the delay, as he "asserts that he was unaware of the warrant against him until his arrest." (Pet'r's Traverse at unnumbered 14; *see also* Pet'r's Objs. at unnumbered 6.) Finally, Petitioner makes no assertions—general or specific—that his defense was impaired, arguing instead that it is the

44

Government's burden to rebut the presumption of prejudice. (*See* Pet'r's Traverse at
unnumbered 14; Pet'r's Objs. at unnumbered 6–11.)

When considering all of the *Barker* factors, even assuming that the Government's
negligence was to blame for Petitioner's pre-arrest delay, Petitioner has not established that the
state court's decision "resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established federal law." 28 U.S.C. § 2254(d)(1). In particular,
"[a]lthough a showing of prejudice is not a prerequisite to finding a [S]ixth [A]mendment
violation, courts generally have been reluctant to find a speedy trial violation in the absence of
genuine prejudice." *United States v. Jones*, 129 F.3d 718, 724 (2d Cir. 1997) (internal quotation
marks omitted). Additionally, the Supreme Court has instructed that "to warrant granting relief,
negligence unaccompanied by particularized trial prejudice must have lasted longer than
negligence demonstrably causing such prejudice." *Doggett*, 505 U.S. at 657. In the absence of
allegations or proof of prejudice to Petitioner or bad faith on the part of the Government, and
where there was a pre-arrest delay of only approximately fifteen months, the Court cannot
conclude that the state court's decision was contrary to or involved an unreasonable application
of federal law. *See United States v. Jones*, 91 F.3d 5, 9 (2d Cir. 1996) (holding where "the only
delay which can reasonably be attributed to the government is 12 months," and "[i]n the absence
of some additional compelling circumstance, such as bad faith by the prosecution or actual
prejudice," the district court abused its discretion in dismissing the indictment); *see also Smith v.
La Clair*, 353 F. App'x 486, 488 (2d Cir. 2009) (holding that a delay of two years, 11 months of
which was attributable to the government's negligence, was "insufficient to compel the
conclusion that the Appellate Division unreasonably applied established Supreme Court
precedent in rejecting [the petitioner's] speedy trial claim even if [he] failed to identify any

45

prejudice arising from the pretrial delays"); *Rayborn v. Scully*, 858 F.2d 84, 91–94 (2d Cir. 1988) (holding that, even if the court were to conclude that the state was negligent in searching for the petitioner for the first four and one-half years of delay, the indictment should still not be dismissed because there was no suggestion of a purposeful delay to gain a tactical advantage, Petitioner was late in asserting this right, and Petitioner was "not perceptibly prejudiced" as a result of the delay, noting that "courts generally have been reluctant to find a speedy trial violation in the absence of genuine prejudice"); *Flowers v. Warden, Conn. Corr. Inst., Somers*, 853 F.2d 131, 134 (2d Cir. 1988) (holding that a 17-month delay "result[ing] from a rigid and troubling adherence to a lock-step, chronological approach to case management" did not amount to a denial of the petitioner's speedy trial right because there was "no bad faith, negligence, or tactical maneuvering," and Petitioner "suffered no prejudice to his defense"); *Fisher*, 2014 WL 128015, at *17 ("Absent any specific identification of prejudice, the 10–month delay between [the petitioner's] indictment and first plea did not violate his constitutional right to a speedy trial."); *Dunavin v. Leonardo,* No. 95–CV–296, 1997 WL 151771, at *3 (N.D.N.Y. Mar. 31, 1997) ("In the absence of a showing of prejudice, courts generally will not find a speedy trial violation unless all of the remaining *Barker* factors weigh heavily in favor of the appellant."). Because the delay at issue here is significantly shorter than delays where no speedy trial violation was found, the presumption of prejudice is weaker because, at the very most, the delay was due to negligence, and no prejudice was even alleged, let alone shown, the Court cannot conclude that the state court's decision was contrary to or constituted an unreasonable application of established federal law.

III. Conclusion

The Court hereby adopts the portions of the R&R that are consistent with this Opinion. Therefore, the Petition is dismissed with prejudice. As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability shall not be issued, *see* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111–12 (2d Cir. 2000), and the Court further certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, *see Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous."); *Burda Media Inc. v. Blumenberg*, 731 F. Supp. 2d 321, 322–23 (S.D.N.Y. 2010) (citing *Coppedge* and finding that an appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith).

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent and to close this case.

SO ORDERED.

Dated: White Plains, New York
November 18, 2015

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE